Roslyn SAAB, Plaintiff-Respondent,

v.

James SAAB, Defendant-Appellant.

No. 43239.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 4, 1982.

Dale Rollings, St. Charles, for defendant-appellant.

G. Jeffrey Lockett, St. Charles, for plaintiff-respondent.

PUDLOWSKI, Judge.

Appellant, James Saab, appeals the judgment below finding him guilty of criminal indirect contempt for non-payment of child support. The trial court, after a hearing with all parties present, made its findings on June 27, 1980, and determined that appellant was guilty of criminal indirect contempt and should be confined in the county jail for 30 days provided however, that he could purge himself by: a) "paying all current arrearages in child support, if any; b) making all child support payments during the balance of the year of 1980 timely, according to the original dissolution decree, i.e., the payments shall be made on or be-fore the 30th of each month; and, c) paying the respondent $1,000 for attorney's fees and court costs."

Appellant and respondent were divorced on October 1, 1976. The decree of dissolution ordered appellant to pay to respondent the sum of $300.00 per month as child support until the emancipation of the older child and the sum of $200.00 per month thereafter for the younger child.

In the contempt hearing the parties hotly dispute the appellant's income, his assets and his slow method of payments. Respondent claims that appellant repeatedly fell behind in his payments and those payments were usually partial and dilatory. Respondent also claims that during this period: a) appellant retained ownership of his real estate business; b) he was employed by an investment company; c) he had sufficient means to open a bakery; d) he purchased a condominium in Florida; e) he also purchased a new car, a pickup truck, a motorcycle, a new boat and trailer, and, f) he owned or managed rental properties from which he received regular monthly income.

Appellant, claimed that he was under psychiatric care immediately following the decree. His bakery business failed because the respondent garnished his bank account. His income for 1977 and 1978 was only $6,000 and $12,000 respectively. The condominium in Florida belongs to his present wife and the rental properties are not available to him either as a source of income or as collateral to borrow against. The rental income from the several properties held by him as a result of the marital property settlement was his only certain source of income and that sale of those assets would destroy the only regular income available to him. Although there was a conflict in the amount owed, appellant acknowledged at the time of the hearing that he was in arrears in the sum of $519.48.

Appellant alleges several errors of the court on the grounds that the trial court's order was a criminal contempt order rather than a civil contempt order. The contempt order issued by the trial judge states that the appellant is "... guilty of

criminal, indirect contempt of court . . . ." The trial court designation, however, does not necessarily render the contempt here criminal. *Teefey v. Teefey,* 533 S.W.2d 563 (Mo. banc 1976). We must rather look to the substance of the order to determine its true nature. Civil contempt is remedial. It is for the protection of a party to the litigation, the party for whose benefit the original judgment or decree was entered. Its function is to provide a coercive means to compel the other party to the litigation to comply with relief granted to his adversary. The civil contemnor has at all times the power to terminate his punishment by compliance with the original order of the court. *Teefey,* supra at 566; 17 C.J.S. Contempt § 62(6), pp. 157 to 158. The contempt order in this case possesses all the above mentioned characteristics of civil contempt. The purpose of this contempt decree is to coerce the appellant into compliance with the dissolution decree entered in October, 1976 with respect to child support payments. Furthermore, the contempt order provides that the appellant can purge himself of the contempt by complying with the court ordered support obligation. Whereas, criminal contempt proceedings are punitive in nature. Their purpose is to preserve the power and vindicate the authority and dignity of the court, and to punish for disobedience of its orders. *Chemical Fireproofing Corp. v. Bronska,* 553 S.W.2d 710, 715 (Mo. App. 1977). It is clear from the facts of this case that the contempt order's purpose was patently remedial and not punitive and thus civil in nature. The procedural errors claimed by the appellant under the guise of criminal contempt are without merit.

█ In the event that we find, as we do, that the court order was not criminal in direct contempt, the appellant alleges numerous errors of the court based upon the trial court's civil contempt order. The appellant first attacks the basis for the court's authority to allow respondent to retain her private attorney to prosecute this action. After a thorough examination of the record we find that the trial judge exercised his inherent contempt power to enforce private rights arising from the original litigation.

This is not a contempt proceeding authorized by the Dissolution of Marriage Act, § 452.345 RSMo (1978). That provision states that a party obligated to pay maintenance or child support may, if the court so orders, discharge that obligation by paying the monthly sums to the circuit clerk. If the obligor falls in arrears on his payments, and he fails to make up the arrearage, then the prosecuting attorney is authorized to bring contempt proceedings against the obligor with consent of the obligee. § 452.345 RSMo (1978). In this case the appellant was never ordered to make any payments to the circuit clerk. All payments were ordered to be made directly to respondent. Under these circumstances the prosecuting attorney is not required to bring this contempt proceeding. The respondent opted to bring this action by selecting her personal attorney and it is patent that the respondent chose not to bring this action under § 452.345 RSMo (1978). The hearing prosecuted by respondent's attorney and the contempt order emanate from the inherent contempt authority of the trial judge.

Before addressing appellant's subsequent contentions we must keep in mind that the purpose of civil contempt is remedial. It is to provide a coercive means to compel the recalcitrant party to comply with relief granted to his adversary. *Teefey, supra.* It is axiomatic that the trial court can exercise its contempt power only to compel the contemnor to comply with those obligations arising from the judgment or decree which the contemnor has in fact failed to perform.

█ Having in mind the purpose and the limited action of the court, we now turn to examine the contempt order and appellant's allegations of error pertaining to the court's award of attorney's fees and their method of payment. With respect to attorney's fees we find that the trial judge need not be limited with the provisions of § 452.355, RSMo (1978) in awarding attorney's fees, since the contempt order was issued pursuant to the trial court's inherent contempt power. *In re Marriage of Morriss,* 573 S.W.2d 101, 103 (Mo. App. 1978). We recog-

nize that there is authority indicating that a trial court may award reasonable attorney's fees in a civil contempt proceeding. *Frankel v. Moskovitz,* 503 S.W.2d 428, 434 (Mo. App. 1975). We hold that in civil contempt proceeding where imprisonment is ordered that an award of attorney's fees is permissible but payment of the fees cannot be a condition for purging the contempt order. The trial court can only exercise its coercive power to compel compliance with a preexisting obligation on which the contemnor is in default. Attorney's fees arising from the contempt proceeding itself is a new order and does not qualify as an obligation under the original order. The trial court erred when it made payment of attorney's fees a condition of purgation.

 Appellant also contends that the trial court erred in ordering him, as a condition of purging himself of contempt, to comply with making payments in the future. We agree. As stated earlier civil contempt is a remedial vehicle for obtaining relief for past dereliction. When a trial judge attempts to use his contempt power to enforce future obligations he exceeds his authority. *In re Marriage of Vanet,* 544 S.W.2d 236, 248 (Mo. App. 1976). Furthermore, if the contemnor is in arrearage on future payments included as part of the contempt order, he would be deprived of the opportunity of a court hearing to determine whether he is able to meet his obligations through no fault of his own. This is in direct violation of the Supreme Court's holding in *Stanhope v. Pratt,* 533 S.W.2d 567 (Mo. banc. 1976).

We find the above mentioned errors sufficient to reverse and vacate the contempt order issued in this case. In light of our holding we need not address appellant's other contentions save this final allegation of error. The appellant contends that the court erred in failing to specifically set out the amount to be paid in order for him to purge himself by paying "all current arrearages in child support, if any." The order is vague and uncertain. If the amount to be paid has not been adjudicated and spelled out in a judgment . . . the power to purge oneself of contempt is seriously compromised. *In re Marriage of Vanet, supra* at 246. A judgment or order in contempt should state the amount which is in arrears so that the contemnor may know and pay the sum and purge himself. 24 Am. Jur. 2nd, Divorce and Separation, § 770, p. 879. The judgment in this case was flawed. However, whatever error existed is academic. The appellant acknowledged the sum owed and although the judgment was uncertain he knew what amount had to be paid in order to purge himself.

Judgment of contempt reversed and vacated; Judgment of the award of respondent's attorney's fees and court costs affirmed.

SMITH, P.J., and SATZ, J., concur.