Larry HUNT, Petitioner,

v.

Edward MORELAND, Respondent,

Marguerite Hunt Grove, Intervenor.

No. 50313.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 3, 1985.

Thomas R. Schlesinger, St. Louis, for petitioner.

Christopher J. McCarthy, Clayton, for respondent.

Nancy L. Schneider, St. Charles, for Intervenor.

CARL R. GAERTNER, Presiding Judge.

Petitioner, Larry Hunt, seeks our writ of habeas corpus contending his incarceration for contempt of court is illegal. We agree and order the writ to issue.

The marriage of petitioner and intervenor, Marguerite Hunt Grove, was dissolved in November, 1980. In the dissolution decree, petitioner was ordered to pay child support in the amount of $30.00 per week, per child. Petitioner's failure to make these payments resulted in the initiation of contempt proceedings by intervenor. A hearing upon intervenor's motion was scheduled before the Honorable Robert W. Saitz on December 11, 1984. On that date the attorney who had previously represented petitioner sought leave to withdraw because of a lack of cooperation from his client and lack of reimbursement for costs expended and failure to pay attorney's fees. Judge Saitz granted leave to withdraw. Thereafter petitioner, unrepresented by counsel, signed a handwritten memorandum which stated:

(1) Plaintiff appears in person and by attorney Keith W. Hazelwood. Defendant's counsel Randall Kopf, requests leave to withdraw and leave is granted. Defendant appears in person, having received notice of the proceedings and having knowledge of the nature of the proceedings.

(2) The parties agree that defendant owes $8,625.95 in past due support as of 12/7/84 without calculating unpaid interest. The parties further agree that defendant has had the ability to pay child support since November 7, 1980. The parties further agree that the court may find defendant in contempt.

(3) Plaintiff agrees that if defendant pays the total arrearage of $8,625.95 by the sentencing date, plaintiff will waive interest and attorney's fees. If not paid by sentencing date, plaintiff reserves her rights with respect to interest and attorney's fees.

(4) The court finds defendant Larry Hunt in contempt of court based on the stipulations in Paragraph (2) above. The court defers sentencing until June 13, 1985. If at the sentencing date, defendant has paid $8,625.95 plus the current weekly payments between 12/11/84 and 6/13/85, the court will impose no sentence. Failure to purge by payment of $8,625.95 and by payment of current weekly payments will cause the court to impose sentence (including potentially a ~~jail~~ imprisonment) or to defer sentencing.

This memorandum was filed and approved by Judge Saitz. On June 13, 1985 the

parties again appeared. Petitioner remained unrepresented by counsel. After a hearing, Judge Saitz found petitioner guilty of indirect civil contempt and ordered him to be confined with the St. Louis County Department of Justice Services. Both the judgment of contempt and the order of commitment contained the following findings:

1. [That petitioner did] stipulate and acknowledge in open court on 12/11/84 that he was in contempt of this court in that he owed petitioner $8,625.95 in past due child support as of 12/7/84, without calculating unpaid interest. Said Larry Hunt further did stipulate and acknowledge in open court on the 11th day of December, 1984, that he had the ability to pay child support since November 7, 1980.

2. Thereafter respondent did fail to purge himself of contempt by failing and refusing to pay the $8,625.95 past due child support or to remain current in child support between 12/11/84 and 6/13/85, which amounts said Larry Hunt had the ability to pay on 12/11/84 and that said Larry Hunt has, since 4/1/85 contumaciously placed himself in a position so that he cannot pay said child support awards.

The court ordered petitioner to be imprisoned in the St. Louis County Jail until he "elects to adhere to the court order of 12/11/84 plus interest on the said $8,625.95."

On July 2, 1985, petitioner filed his application for a writ of habeas corpus. On the same date we issued an order to show cause on the next day why said writ should not issue. On July 3, 1985, the parties appeared, a schedule for briefing and oral argument was established. It was further ordered that defendant be released from custody on bond.

Petitioner asserts that his imprisonment is illegal because: (1) imprisonment for civil contempt of court is unlawful where the record shows he does not have the ability to purge himself of contempt. (2) his imprisonment without representation by counsel is in violation of his due process rights under the Fifth and 14th Amendments of the United States Constitution; (3) the commitment order is invalid in that it did not state facts constituting contumacious contempt. We address these contentions in reverse order.

▇▇▇ Although an appeal lies from a judgment of civil contempt, habeas corpus is also available as a means of determining the legality of a petitioner's restraint insofar as it may be determined from the face of the record. *Ex Parte Ryan*, 607 S.W.2d 888, 892 (Mo.App.1980). It is well established that a judgment or commitment order in a contempt proceeding which fails to recite the facts and circumstances which constitute the offense, but merely states legal conclusions, cannot stand. *Ex Parte Brown*, 530 S.W.2d 228, 231 (Mo. banc 1975); *In re Marriage of Allison*, 649 S.W.2d 566, 567 (Mo.App.1983); *Leslie v. Leslie*, 620 S.W.2d 48, 49 (Mo.App.1981); *Ex Parte Ryan*, 607 S.W.2d 888, 891–92 (Mo.App.1980). Here, the judgment and the order of commitment merely stated that petitioner "has since 4/1/85 contumaciously placed himself in a position so that he cannot pay said child support awards." Whether he divested himself of assets, voluntarily left employment, refused to seek employment, or whatever, and whether he did so intentionally for the purpose of frustrating enforcement of the court's order is not stated. This failure to set forth with particularly what petitioner did or did not do on or after April 1, 1985 renders the finding of the trial court a mere conclusion insufficient to support the order of commitment.

▇▇▇ Moreover, we agree with petitioner's contention that his incarceration in the absence of representation by counsel, or a knowing and intelligent waiver of counsel is in violation of due process rights guaranteed by the Fifth Amendment of the United States Constitution, made applicable to the states by the 14th Amendment. That "no person may be imprisoned for any offense, whether classified as petty, misdemeanor or felony, unless he was represented by

counsel at his trial" has become an irrefutable principal of constitutional law since *Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32 L.Ed.2d 530 (1972). Regarding constitutional requirements in contempt proceedings, the Supreme Court of the United States stated *In re Green's Petition,* 369 U.S. 689, 691–92, 82 S.Ct. 1114, 1116, 8 L.Ed.2d 198 (1962):

> [P]rocedural due process "requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, *have the right to be represented by counsel,* and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation." (emphasis added).

(quoting *In re Oliver,* 333 U.S. 257, 275, 68 S.Ct. 499, 508, 92 L.Ed. 682 (1948)).

*Argersinger* imposed a duty upon trial court judges to recognize before commencing the trial of a misdemeanor that imprisonment may not be imposed unless the accused is represented by counsel.[1] The trial judge "will have a measure of the seriousness and gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts." *Argersinger,* 407 U.S. at 40, 92 S.Ct. at 2014. Underlying this rule was the recognition by the Supreme Court of the serious repercussions upon an individual's life and career of even a short period of imprisonment, that the length of imprisonment does not affect the complexity of legal and constitutional questions involved, that a fair trial, even in less serious than felony prosecutions, may require the assistance of counsel to cope with problems of law, to make skillful inquiry into the facts, to insist upon regularity of the proceedings, to prepare and submit whatever defense may be available. 407 U.S. at 33, 92 S.Ct. at 2010–11. These same considera-

tions are no less applicable to contempt proceedings in which there is a significant likelihood of imprisonment if the accused is found guilty. In his concurring opinion in *Argersinger,* Chief Justice Burger pointedly expressed the responsibility of trial judges sitting in petty and misdemeanor cases:

> Because no individual can be imprisoned unless he is represented by counsel, the trial judge and the prosecutor will have to engage in a predictive evaluation of each case to determine whether there is a significant likelihood that, if the defendant is convicted, the trial judge will sentence him to a jail term. The judge can preserve the option of a jail sentence only by offering counsel to any defendant unable to retain counsel on his own.

407 U.S. at 42, 92 S.Ct. at 2014.

Trial judges have heretofore been admonished to consider a requirement that the party seeking a contempt order as a means of enforcement of the provisions of a dissolution decree make reasonable efforts to collect by conventional remedies before entering the contempt order. *State ex rel. Stanhope v. Pratt,* 533 S.W.2d 567, 575 (Mo. banc 1976). A "predictive evaluation" regarding the likelihood of sentencing an uncounselled debtor to jail should be an additional consideration of a trial judge prior to the commencement of a hearing on a charge of contempt.

■ What we hold here does not affect the power of the court to punish summarily an individual guilty of direct contempt where such summary action is necessary in order to maintain the dignity and decorum essential to orderly judicial proceedings or to prevent demoralization of the court's authority. However, in the case of indirect contempt, civil or criminal, unless the trial judge predetermines the nature of the infraction is of insufficient gravity to war-

---

1. Several courts have extended the *Argersinger* principle to contempt proceedings. *See, e.g. Ridgway v. Baker,* 720 F.2d 1409, 1415 (5th Cir.1983); *Matter of Kitchen,* 706 F.2d 1266, 1273 (2d Cir.1983); *United States v. Anderson,* 553 F.2d 1154, 1155–56 (8th Cir.1977); *In Re DiBella,* 518 F.2d 955, 959 (2nd Cir.1975); *In re Kilgo,* 484 F.2d 1215, 1221 (4th Cir.1973); *Hunkel v. Bradshaw,* 483 F.2d 1386, 1389 (9th Cir. 1973); *People v. Lucero,* 196 Colo. 276, 584 P.2d 1208, 1214 (1978).

rant the imposition of imprisonment if the accused is found guilty, the unrepresented accused must be advised of his right to counsel and, absent a knowing and intelligent waiver thereof, be given adequate opportunity to obtain representation. If he be found indigent, counsel must be appointed before any critical stage of the contempt proceeding.

We are not unmindful of the recurring problems of enforcing compliance with the provisions of dissolution decrees. Nevertheless, neither stubborn recalcitrance based, perhaps, on lingering emotionalism, nor even open defiance of judicial authority, warrants the disregard of the constitutionally protected right to due process of law when a deprivation of liberty is contemplated.

The first point relied upon by petitioner relates to the facial inconsistency inherent in a judicial determination that an individual is unable to comply with an order of court and a simultaneous order of imprisonment for civil contempt unless he does comply. Petitioner relies upon the decision of this court in *State ex rel. Foster v. McKenzie,* 683 S.W.2d 270 (Mo.App.1984), wherein we held that a judicial determination of indigency precludes incarceration for contemptuous failure to make payments as ordered in a dissolution decree; the contemnor must have the ability to purge himself to justify imprisonment for civil contempt. *Id.* Otherwise, the coercive purpose of civil contempt will be frustrated as the contemnor has no key to the jailhouse door. The trial court's order herein is obviously predicated upon language common to the two seminal cases of *Teefey v. Teefey,* 533 S.W.2d 563, 566-67 (Mo. banc 1976) and *State ex rel. Stanhope v. Pratt,* 533 S.W.2d at 575.

> Before ordering imprisonment trial courts should be convinced that the person is financially able to make the required payment or that he has intentionally and contumaciously placed himself in a position so that he could not comply with the court's orders.

Because the adjudication of civil contempt and the order of commitment must be overturned for the reasons stated above, we find it unnecessary to address petitioner's additional point relied on.

The petition for writ of habeas corpus is granted. The writ is issued and petitioner is ordered discharged.

SATZ and KAROHL, JJ., concur.