**Elaine G. BEWIG, Respondent,**

v.

**John P. BEWIG, Appellant,**

**Carol Bewig, Third–Party Respondent.**

**No. 55805.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 6, 1990.

Gael Davis Wood, James W. McGettigan, Jr., Washington, for appellant.

John C. Maxwell, St. Charles, for respondent.

CARL R. GAERTNER, Judge.

Appellant, John P. Bewig, appeals from the judgment of civil contempt and order of commitment entered by the Circuit Court of St. Charles County on November 17, 1988.

On January 12, 1981, the marriage of appellant and respondent, Elaine Bewig, was dissolved. Appellant was ordered to pay $35 per week per child for support of the parties' two minor children. This order of child support was modified on April 18, 1985, and appellant was ordered to pay $60 per week per child, to maintain health and dental insurance for the children, and to pay any such expense not covered by insurance. We affirmed this modification in *Bewig v. Bewig*, 708 S.W.2d 769 (Mo.App. 1986). Appellant's failure to comply fully with this order resulted in respondent's filing a motion for contempt on September 11, 1987. This matter was resolved by a stipulation of the parties, incorporated into the court's judgment on November 20, 1987, whereby appellant was ordered to make payments on accrued arrearages, begin paying child support as previously or-

dered, and procure the medical and dental insurance within thirty days.

On March 7, 1988, respondent filed her First Amended Motion for Contempt and To Set Aside Fraudulent Conveyances in which she alleged appellant had paid no support, had not obtained insurance coverage, and had transferred $41,000 to his present wife, Carol, who was joined in the action and denominated as third-party respondent. All parties appeared before the court on August 15, 1988. The court was advised that a petition for dissolution of the marriage of John and Carol had been filed in Franklin County, which created a conflict for the attorney who had been representing both of them in this matter. The court permitted the attorney to withdraw and directed John and Carol to obtain new counsel within twenty days as the matter would be called on the September Law Day for a setting in October.

The motion for contempt was set for a hearing on November 17, 1988. On that date both respondent, Elaine, and third-party respondent, Carol, appeared with counsel. Appellant appeared but without an attorney. When questioned by the court, appellant claimed he had retained an attorney to represent him in this matter and in the Franklin County dissolution case, but this attorney had withdrawn two weeks earlier. He claimed to have thereafter consulted another attorney who he believed would represent him. Noting that neither of the two attorneys appellant named had filed an entry of appearance, the trial court stated to appellant: "There has been no indication that you made any effort here to have any attorney represent you ... so as best you can you are going to have to represent yourself." The court also noted that an answer had been filed on appellant's behalf and that he was not in default.

Respondent then testified that appellant failed to make the child support payments, failed to obtain insurance or to pay attorneys fees as ordered. She computed the total arrearage of child support and medical and dental expenses for the children, plus interest, totalling $21,011.41 as of the date of the hearing. Appellant did not dispute this amount. He admitted that he had not paid any part of the increased amount of child support as ordered in April, 1985, even though in November, 1986, he received $41,000 from the sale of a business. He used this sum to buy a new business, the J.C. One Stop, a gas station and convenience and food store. This business was operated by appellant and Carol until their separation.

The trial court in its findings of fact specifically noted that a financial statement of J.C. One Stop for the month of January, 1988, reflected a profit of $5,188 and "personal draws" of $3,753. The court also found that appellant had purchased a new motor vehicle in 1987 for approximately $12,000. The court found appellant's testimony that he was not realizing any profit from this business to be "wholly unreliable and not to be believed." The court further found that since the April 18, 1985 order appellant had the physical and financial ability to comply with the orders of the court, and that although employed since that date appellant "has willfully, intentionally and contumaciously refused to pay any portion of the increased child support ordered by this court...."

In its judgment, the court ordered appellant committed to imprisonment in the St. Charles county jail until he purged himself of contempt by paying to the Clerk of the Court the sum of $25,821.41, consisting of $16,974.11 principal and $4,037.30 interest for past due child support, and $4,810 for attorney's fees, or by supplying the court with an acceptable written plan for payment within a reasonable time. The court further ordered that assets of J.C. One Stop apparently owned jointly by appellant and third-party respondent be subject to execution to satisfy appellant's indebtedness to respondent and her attorney.

A written order of commitment was delivered to the Sheriff of St. Charles County which contained the conditions upon which appellant could purge himself of contempt and be released from custody. The court's findings and judgment were attached to and incorporated in the order of commit-

ment. The legal file reflects that a bond, set by the court, was filed.

Appellant does not challenge the sufficiency of the evidence to support the conviction of contempt, but seeks reversal of the judgment because of alleged procedural errors. Our review of this court-tried matter is governed by the well-known principles of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Moreover, in matters of credibility we are constrained to give due deference to the trial court's determination, who may reject the testimony of any witness even though such testimony is unrefuted. *Terre Du Lac, Inc. v. Fuhrmeister*, 753 S.W.2d 4, 5 (Mo.App.1988). Guided by these principles, we address the four points relied on by appellant.

■ First appellant contends he was unconstitutionally deprived of liberty without due process of law because he did not knowingly or intelligently waive his right to counsel. He relies upon *Hunt v. Moreland*, 697 S.W.2d 326, 328 (Mo.App.1985), in which this court ruled that in a proceeding for civil contempt to compel compliance with the court order to pay child support, the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution confer upon the alleged contemnor the right to be represented by counsel.[1] We held that in such a proceeding an order of incarceration could not be upheld "in the absence of representation by counsel, or a knowing and intelligent waiver of counsel." *Id*. The record in this case amply supports the implicit conclusion of the trial court that appellant had knowingly and intelligently waived this right.

Appellant was present in court on August 15, 1988, when he was directed by the judge to retain counsel within 20 days because the hearing was going to be rescheduled at the court's next Law Day. Appellant signed the written order, which also recited this directive. Three months later, he appeared in court without a lawyer. The court was free to accept or to reject appellant's statement that until the previous day he had believed he was represented. The unequivocal rejection of this contention is evidenced by the court's response: "There has been no indication that you made any effort to have an attorney represent you." In its written findings of fact and conclusions of law, the court found appellant neglected to comply with the August 15 directive to obtain new counsel even though he was not indigent and had retained counsel to represent him in the Franklin County dissolution action. This finding is supported by the information supplied to the court by Carol Bewig's attorney that the lawyer in Franklin County had only been hired in connection with matters pending in that jurisdiction. We refuse to second-guess the trial court in a matter so totally dependent upon credibility.

■ Appellant also argues that the judgment of contempt should be set aside because he was not given proper notice of the hearing. He points to the absence from the legal file of any entry showing that notice of the date of the hearing was mailed to him. He relies upon *Walsh v. Walsh*, 652 S.W.2d 274 (Mo.App.1983), where this Court held that failure to give notice of a trial setting might be considered a procedural defect rendering a judgment irregular on its face and subject to a motion to set aside under Rule 74.32 (repealed effective 1/1/88). However, in *Walsh*, the court concluded no such relief was warranted in view of the lack of diligence displayed by the defendant in failing to make any inquiry about a trial setting during the thirty day period between counsel's withdrawal and the trial. "If a party neglects to look after the course of the proceeding in which he is involved, he should have no cause to complain about the court's action." *Walsh* at 276, quoting from *Golden v. Euge*, 612 S.W.2d 362, 363 (Mo.App. 1980). Moreover, appellant did in fact re-

1. In the circumstances of this case we need not address the distinction drawn by some courts between the right to counsel under the Due Process Clause of the Fifth and Fourteenth Amendment in civil contempt proceedings and the right to counsel under the Sixth Amendment in criminal proceedings. *See e.g., State ex rel. Dept. of Human Services v. Rael*, 97 N.M. 640, 642 P.2d 1099 (1982); *Jolly v. Wright*, 300 N.C. 83, 265 S.E.2d 135 (1980).

ceive notice of the hearing and did appear. He does not suggest and the record does not disclose that he suffered any prejudice as a result of the failure to receive formal notice of the trial setting.

The legal file indicates that when November 17, 1988, was designated as the date of trial, presumably on the circuit's September Law Day, the record showed appellant, who was not in default, to be unrepresented by counsel. At that time it would have been appropriate for the court to direct the clerk or opposing counsel to give appellant notice of the designated date and enter proof of such notice in the court record. *Walsh,* 652 S.W.2d at 275. Nevertheless, the circumstances of this case, including appellant's lack of diligence, his actual receipt of notice in time to appear, his many admissions of material facts, and his failure to suggest any facts which might demonstrate a different outcome if he had received earlier notice, all militate against reversing the trial court's judgment because of a formal defect. Rule 84.13(b).

■ Appellant also charges trial court error in failing to recite the specific facts constituting the contempt in the order of commitment. He does not challenge the sufficiency of the findings of fact set forth in the judgment of contempt which was "appended to and made a part" of the commitment order. *In Ex Parte Neal,* 507 S.W.2d 674, 680 (Mo.App.1974), it was held that an order of commitment, legally insufficient because of failure to recite the facts constituting the contempt, could not be validated by the specificity of the judgment in which it was based when the commitment order "... does not purport to set out said judgment nor incorporate it by reference so as to make it a part of the commitment." *Id. See also In re Randolph,* 474 S.W.2d 36, 39 (Mo.App.1971). We believe the converse to be equally true: that attachment and incorporation by reference of specific, detailed findings of fact set forth in the judgment does serve to validate an order of commitment which does not otherwise express such facts. To hold otherwise would require useless duplication, placing form over substance.

■ In his final point on appeal, appellant charges trial court error in including as a part of the sum he must pay to purge himself of contempt the attorney's fees incurred by respondent for the contempt proceedings. Respondent testified that appellant was ordered to pay her attorney's fees of $1,250 in the order of modification of child support, and an additional sum of $1,240 in connection with the appeal from this modification. Her attorney testified regarding his time expended in the contempt proceeding and requested additional attorney's fees in the sum of $1,695. In its judgment the court included the sum of $4,810 in attorney's fees as one item of appellant's indebtedness of $25,821.41 which he must pay in order to obtain his release from custody. We are unable to find support in the record presented to us for the trial court's computation of $4,810 as the amount of unpaid attorney's fees. Appellant is obligated to pay interest on the attorney's fee awards of $1,250 and $1,240 from the respective dates upon which they were ordered, but these dates are not reflected in the record before us. He is not required to pay attorney's fees arising from the contempt proceeding as a condition of purging himself of contempt.

■ In *Saab v. Saab,* 637 S.W.2d 790, 792 (Mo.App.1982), we noted that civil contempt is a means for compelling compliance with the terms of a pre-existing judgment on which the contemnor is in default. Thus, while the court may order payment of attorney's fees incurred in a civil contempt proceeding, this becomes a new order and does not qualify as an obligation under the original order. *Id.* at 793. Accordingly, payment of attorney's fees for services rendered in the contempt proceeding may not be a condition of purging the contemnor of his past dereliction.

We are constrained to remand this case to the trial court for determination of the proper amount of attorney's fees owed by appellant pursuant to the earlier court orders. This will require a recomputation of the amount appellant is required to pay in

order to purge himself of contempt and obtain his discharge.

In all other respects the judgment is affirmed.

HAMILTON, P.J., and STEPHAN, J., concur.