**William L. MEINERS, Appellant,**

v.

**Dorothy Sue MEINERS, Respondent.**

No. 62523.

Missouri Court of Appeals,
Eastern District,
Division One.

July 27, 1993.

James B. Herd and Kenneth J. Morton, St. Louis, for appellant.

Allan H. Zerman and Cary J. Mogerman, Clayton, for respondent.

CRIST, Judge.

Former husband (Husband) appeals judgment finding him in contempt and ordering him jailed for failure to pay maintenance and child support. Husband also appeals the denial of his motion to modify maintenance.

On March 23, 1981, the trial court entered a decree of dissolution of the marriage between Wife and Husband. The decree incorporated a separation agreement entered into by Wife and Husband. Nine children were born of the marriage, and four were emancipated at time of trial. Wife was awarded primary custody of four of the minor children, while Husband was awarded primary custody of one child. The decree ordered Husband to pay $100 per month per child for support for the four children in Wife's custody. It also ordered him to pay $100 per month for child support for the child of whom he had primary custody whenever Wife had physical custody of that child. Husband was also ordered to pay maintenance to Wife in the amount of $1,333 per month. The separation agreement further provided Wife had the right to live in the marital home

until the last minor child reached the age of twenty-one or became emancipated. At that time, the marital home would be sold with the proceeds divided evenly between Wife and Husband.

On October 12, 1990, Wife brought a motion to cite and punish Husband for contempt and compel compliance with the decree of dissolution. Wife averred Husband had knowingly, willfully and contumaciously violated the decree of dissolution and was currently in arrears for maintenance and child support payments totalling $38,110 plus interest. Wife further requested the court order Husband to transfer his interest in the marital home to her in satisfaction of his past-due maintenance and child support.

In response, on October 25, 1990, Husband filed a motion to terminate child support, modify maintenance, and order the sale of marital property. In his motion to modify maintenance, Husband alleged substantial and continuing changes that made the decree unreasonable, namely his income had decreased and Wife's expenses had decreased.

The motions were consolidated into one hearing on May 4, 1992. At that hearing, Husband admitted he was in arrears on child support and maintenance payments. However, he attempted to justify his delinquency by arguing he was unemployed and had no source of income. On July 1, 1992, the trial court issued its order which terminated Husband's child support obligation, denied Husband's motion to modify maintenance, and ordered Husband to transfer his interest in the marital home to Wife as a credit against his past-due child support and maintenance. The court found the fair market value of the marital home to be $85,000, with Husband's interest to be $42,500.

The court also issued its judgment of contempt finding Husband was in arrears on his maintenance and child support obligation in the amount of $67,099.06. The court further found that:

> based on the evidence, that [Husband] has had the ability to pay the Court ordered child support and maintenance payments constituting this arrearage, but has willfully and contumaciously failed and refused to do so in conscious disregard for this Court's Orders contained in the Decree of Dissolution, or has placed himself voluntarily in a position of uncompensated employment and/or non-employment by which he has intentionally diminished his income and has thereby willfully and contumaciously failed and refused to pay the Court ordered maintenance and child support to Respondent.

The trial court ordered Husband to transfer his interest in the marital home to Wife and pay her the remainder of his past-due obligation in the amount of $24,599.06. In paying the remainder, Husband was ordered to pay Wife $2,000 per month for 12 months and the balance of $599.06 on the thirteenth month together with his future maintenance obligation. Further, if Husband missed one payment, he would be incarcerated until he purged himself of his contempt by paying Wife in full.

Husband did execute a quit-claim deed to Wife of his interest in the marital home. However, he failed to make the payments on his past-due child support and maintenance. On December 1, 1992, the court issued a warrant and commitment order finding Husband in contempt of its prior orders directing him to pay Wife $24,599.06. The court specifically incorporated by reference the judgment of contempt. Finally, the court ordered Husband confined in the St. Louis County jail until he purged himself of contempt by paying Wife in full, further order of the court, or he was otherwise discharged by law.

■ On appeal, Husband first alleges the judgment of contempt and warrant and commitment orders are invalid because they merely state legal conclusions rather than the facts and circumstances which constituted the contumacious conduct leading to his contempt.

■ We agree with Husband's contention that a civil contempt judgment and order of commitment must both set forth the specific facts and circumstances which

constitute the contempt. *See, In re Marriage of Scott,* 792 S.W.2d 679, 683[3] (Mo. App.1990); *Yalem v. Yalem,* 801 S.W.2d 439, 441[6] (Mo.App.1990); *Roark v. Roark,* 723 S.W.2d 439, 441[3] (Mo.App. 1986); and *Hunt v. Moreland,* 697 S.W.2d 326, 328[2] (Mo.App.1985). However, we believe the orders in this case do set forth the specific facts and circumstances, and not mere legal conclusions. In *Hunt,* 697 S.W.2d at 328, this court struck down a contempt order as failing to state specific facts where it merely stated the husband had "contumaciously placed himself in a position so that he cannot pay said child support awards." We opined the contempt order should have included "[w]hether he divested himself of assets, voluntarily left employment, refused to seek employment, or whatever, and whether he did so intentionally for the purpose of frustrating enforcement of the court's order...." *Id.; See also, Roark,* 723 S.W.2d at 441[4] (contempt order which merely stated respondent had knowingly, contumaciously and willfully refused to pay failed to cite specific facts).

In the case at hand, the trial court specifically stated Husband had "placed himself voluntarily in a position of uncompensated employment and/or non-employment by which he has intentionally diminished his income and has thereby willfully and contumaciously failed and refused to pay the Court ordered maintenance and child support...." Further, the warrant and commitment order incorporated this language by reference. Such language is sufficient.

However, Husband also claims the orders are invalid because the judgment of contempt required him to pay maintenance in the future. We agree.

■ A trial court may only exercise its contempt power to compel compliance with obligations arising from a preexisting judgment or decree. *Yalem,* 801 S.W.2d at 441[4]. Use of the contempt power to enforce future obligations is in excess of a trial court's authority. *Saab v. Saab,* 637 S.W.2d 790, 793[9] (Mo.App.1982); *In re Marriage of Vanet,* 544 S.W.2d 236, 248[18] (Mo.App.1976). "[I]f the contem-

nor is in arrearage on future payments included as part of the contempt order, he would be deprived of the opportunity of a court hearing to determine whether he is able to meet his obligations through no fault of his own." *Saab,* 637 S.W.2d at 793[9].

■ In the case at hand, the judgment of contempt issued July 1, 1992, required Husband to make future maintenance payments as well as past-due payments. The warrant and commitment order of December 1, 1992, made no such provision, merely requiring Husband to make the past-due payments to purge himself of contempt. However, the warrant and commitment order incorporated by reference the provisions of the judgment of contempt. As such, the judgment of contempt remains in error and exceeds the trial court's contempt authority.

■ Rule 84.14 allows us to finally dispose of this case unless justice otherwise requires. *See also, Rogers v. Hickerson,* 716 S.W.2d 439, 449[17] (Mo.App.1986). On review, we may dispense with the remand process and "render the judgment that should have been rendered by the trial court...." *Van Pelt v. Van Pelt,* 824 S.W.2d 135, 137[3] (Mo.App.1992). In the case at hand, remanding to the trial court to rewrite the judgment of contempt would be superfluous. Therefore, we modify the judgment of contempt, page three, paragraph three, removing the language "together with the amount of One Thousand Three Hundred Thirty-three Dollars ($1,333.00) per month maintenance" and "and the amount of One Thousand Three Hundred Thirty–Three Dollars ($1,333.00) per months accruing from May 1, 1992."

In Point II, Husband contends the trial court erred in denying his motion to modify maintenance "because the weight of the evidence showed that substantial and continuing changes in the circumstances of the parties had occurred since the dissolution thus rendering the original maintenance provisions unreasonable."

■ Section 452.370, RSMo Supp.1992, provides maintenance may be modified

"only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." The burden of proof on modification rests on Husband. *Mozingo v. Mozingo*, 822 S.W.2d 483, 486[4] (Mo.App.1991). Furthermore, we must affirm the trial court's denial of Husband's motion to modify unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously defines or applies the law. *Wyrick v. Coles*, 834 S.W.2d 910, 912[1] (Mo.App.1992).

■ There is substantial evidence to support the trial court's denial of Husband's motion to modify maintenance. While Husband has not worked as a stockbroker since March 31, 1990, when he testified he was "laid off" from Stifel Nicolaus Co., the trial court found Husband had voluntarily placed himself in the position of unemployment or uncompensated employment. At trial, private investigators testified Husband was seen on five different occasions performing services for the car dealerships owned by his current wife's sons. Testimony of a vocational rehabilitation counselor indicated an average experienced stockbroker earns approximately $71,000 per year. The counselor further testified there was good job availability in St. Louis for stockbrokers with current annual openings of 150 positions. Husband testified that from March 31, 1990 to May 4, 1992, his job search effort consisted of contacting only ten people in the brokerage business. Husband first stated he had done no work of any kind since March 31, 1990, even gratuitously, and later stated he did work gratuitously for his current wife's sons.

In addition, Husband's health is not a factor affecting his earning capacity. He did state he had a heart problem, but his last heart attack was in 1972, prior to his divorce from Wife. He also stated he had a prior incident of prostate cancer, but currently only needed to see his doctor for blood tests to ensure his cancer did not return. Husband in no way indicated his health problems affected his ability to work. *See, Fulp v. Fulp*, 808 S.W.2d 421, 423[3] (Mo.App.1991) (failure to show

health problems would decrease earning capacity in foreseeable future); *Light v. Light*, 753 S.W.2d 628, 630–31[1] (Mo.App. 1988) (future medical problems which did not currently affect earning capacity were not substantial and continuing change).

Wife did have some changes in income. Husband points to six changes occurring after their divorce which he believes are substantial and continuing: (1) Wife's inheritance of about $20,000; (2) Wife's child care income of $150 per week; (3) $442 per month in social security she receives for the 39–year–old child of Husband and Wife with special care needs; (4) $517 in social security Wife receives for herself; (5) Wife's expenses reduced by $250 per month because home mortgage paid; and (6) rent of $160 from her son Matthew.

Wife currently has $10,000 of her inheritance remaining. She testified she had to spend approximately half of it to pay bills. In addition, Wife has not worked outside the home for forty years. She has at home her 39-year-old son who requires constant care. In this case, money received for his care is irrelevant to the issue of her expenses.

In addition, Wife testified her son Matthew pays her $160 rent "when he's working." He currently has a seasonal occupation with the County Parks Department. No showing has been made such rental income is continuous.

Therefore, at most Wife's income has increased $1,117 per month since the divorce. Wife's expenses at the time of the divorce were $2,845 per month without allocation for the children. We do not have before us either Husband's or Wife's current income and expense statements. The only reduction in expenses shown in the record before us was $250 for payment of the mortgage. The record indicates Wife's alleged increase in income still leaves her with approximately $1,500 per month in expenses. Without some indication of current expenses, we are not willing to say the trial court's decision to deny modification is neither supported by substantial evidence nor against the weight of the evidence.

*See, Bunch v. Bunch,* 746 S.W.2d 634, 636[1] (Mo.App.1988). Point denied.

The judgments are affirmed as modified.

AHRENS, P.J., and REINHARD, J., concur.