Dennie L. CAROTHERS, Respondent,

v.

Pamela CAROTHERS, Appellant.

No. SC 91160.

Supreme Court of Missouri,
En Banc.

May 17, 2011.

James McConnell, Shelbina, for the Mother.

Danieal H. Miller, The Law Offices of Danieal H. Miller PC, Columbia, for the Father.

MICHAEL A. WOLFF, Judge.

### Introduction

This appeal raises two questions:

(1) When is a judgment of contempt final for purposes of appeal?

(2) Must the record include waiver of the right to counsel when the defendant in contempt is unrepresented?

Pamela Carothers was found in contempt of court for failing to satisfy a support judgment against her. She was not represented by counsel, and no waiver of her right to counsel appears in the record. Although she filed her notice of appeal within 10 days of being incarcerated, her appeal was dismissed. Her appeal, however, was filed timely. The judgment of contempt was in error because the record does not show that she waived her right to counsel.

### Facts and Procedural History

The marriage of Pamela Carothers and Dennie Carothers [1] was dissolved in 1993. The decree split custody of their three children, with Dennie having custody of the youngest child and Pamela having custody of the two older children. Both parents were required to pay child support for the child or children in the other's custody. The court offset the amounts, and Dennie was required to pay Pamela a certain amount of child support each month. The two children in Pamela's custody became emancipated, and the child support attributable to them was terminated in September 1999. Pamela then was ordered to pay child support to Dennie for the youngest child until April 2007.

Dennie filed a motion for contempt in September 2009 alleging that Pamela owed him back child support for his care of the youngest child.[2] The trial court ordered a show cause hearing for October 2009. Pamela appeared *pro se,* and the hearing was rescheduled for December 2009. Pamela again appeared *pro se* at the December 2009 hearing.

The circuit court entered a judgment of contempt against Pamela on January 12, 2010, for "willfully and contumaciously refus[ing] to pay the child [support] ordered in [the court's] previous Judgments." The court ordered that Pamela be incarcerated in the county jail until the contempt was purged. The court stayed its judgment of contempt until 10 a.m. January 25, 2010, and gave Pamela until this time to purge her contempt to avoid going to jail.

The court made several findings of fact: (1) that Pamela did not make any child support payments from September 1999 until February 2004, when she began making payments; (2) that she made no payments after July 2005; and (3) as a result, that Pamela was in arrears for unpaid child support in the amount of $15,996.86, plus accrued interest of $8,554.22, as of December 2009.

The circuit court further found that Dennie had been ordered to pay Pamela $12,687.50 in December 1999 for a civil case and that Pamela had garnished Dennie's wages from 2005 to 2009 to satisfy this judgment. The court found that Dennie still owed Pamela $13,035.97, including interest, as of December 2009 and that the circuit clerk currently was holding $2,879.14 of Dennie's garnished wages in a court account. The court held that Pamela could purge her contempt in this case by relinquishing any right to the garnished wage money currently held by the court and by filing a satisfaction of judgment for the judgment Pamela held against Dennie in the December 1999 civil case.

The judgment of contempt noted that a warrant for commitment should be issued at 10:00 a.m. January 25, 2010, if Pamela

---

1. The parties hereafter are referred to by their first names for clarity. No disrespect is intended.

2. He also asked the court to order Pamela to pay for certain medical and dental expenses and other obligations. The trial court denied these requests, and they are not at issue in this appeal.

had not filed a satisfaction of judgment by that time. The warrant for commitment was dated January 12, 2010. The warrant states that if Pamela did not purge herself of her contempt, "this Commitment shall be effective January 25, 2010 at 10:00 a.m." The trial court's docket sheet indicates that a copy of the judgment of contempt was mailed to Pamela on January 13, 2010. The docket sheet, however, states that a warrant for commitment was not issued until February 1, 2010, and that the warrant was not served on Pamela until March 31, 2010.

The court's judgment also noted that Pamela had waived counsel at the December 2009 hearing. This waiver does not appear in the hearing transcript. The only information that appears on the record as to a possible waiver is that at the beginning of the hearing, the judge stated that "[Pamela] is present in person, pro se. And there was some conversation at the bench before we started the record." Further, at the end of Pamela's testimony, she states: "Well, like I said, I didn't have the money for an attorney...."

At some point after the December 2009 hearing, Pamela retained counsel. On February 11, 2010, Pamela's counsel filed a notice of appeal on her behalf. Staff counsel for the court of appeals responded on March 9, 2010, with a letter and order stating:

A review of the notice of appeal indicates the absence of a final, appealable judgment. A civil contempt order that stays the warrant of commitment negates the warrant commitment and creates an order that is not final and appealable. *Melson v. Melson*, WL1748698 [292 S.W.3d 375 (Mo.App. 2009) ]; *Eaton v. Bell*, 127 S.W.3d 690 (Mo.App.2004).

The court requests that appellant file suggestions as to why this appeal should

not be dismissed on or before March 23, 2010. Respondent may file suggestions on or before March 30, 2010.

Pamela voluntarily dismissed the appeal on March 24, 2010.

Pamela and Dennie, each with counsel, appeared before the circuit court on March 31, 2010. The warrant of commitment was served on Pamela, and she was taken into custody. On April 6, 2010, Pamela's counsel filed a second notice of appeal on her behalf. Staff counsel for the court of appeals responded on June 9, 2010, with a letter and an order stating:

A review of the record on appeal ... indicates that the appeal is untimely. It appears the notice was not filed within the time limits set out in Rule 81.04 and 81.05. *See Eaton v. Bell*, 127 S.W.3d 690, 697 (Mo.App.2004) (issuance of an order of commitment is sufficient to enforce a contempt order).

The court requests that appellant file suggestions as to why this appeal should not be dismissed on or before July 23, 2010. Respondent may file suggestions on or before July 30, 2010.

After receiving suggestions from Pamela's counsel and Dennie's counsel, the court of appeals dismissed the case on August 5, 2010, as untimely filed under Rule 81.04 and Rule 81.05. This Court granted transfer.

## Timely Filing of Appeal from a Judgment of Civil Contempt

■■■ A civil contempt order is appealable once it becomes final. *In re Marriage of Crow and Gilmore*, 103 S.W.3d 778, 780 (Mo. banc 2003). The "order is not final until it is 'enforced.'" *Id.* at 781. (citing cases). In *In re Marriage of Crow*, this Court was faced with the question of when a civil contempt order is considered "enforced." *Id.* The Court held that an

order of commitment was sufficient to "enforce" a contempt order and, therefore, actual incarceration was not required to appeal. *Id.* The Court reasoned that, "[i]n issuing an order of commitment, the trial court imposes the specific remedy—incarceration. At this point, the contempt order changes from mere threat to 'enforcement,' and becomes final and appealable." *Id.* at 781–82 (citing Rule 81.04(a); section 512.050, RSMo 2000).

After this Court's decision in *Crow*, the court of appeals held that a stayed order of commitment is not final and appealable because the judgment in such a case is only a threat to enforcement. *Eaton v. Bell*, 127 S.W.3d 690, 698 (Mo.App.2004). This is true even when the stay has expired. *Emmons v. Emmons*, 310 S.W.3d 718, 724 (Mo.App.2010). In *Emmons*, the court held that if a warrant is stayed, the judgment will not be final and appealable until either (1) the contemnor is "actually incarcerated on the stayed or conditioned warrant of commitment" or (2) "the trial court takes evidence to determine whether contempt has been purged and then reissues a warrant of commitment." *Id.* at 723.

 This Court adopts the *Emmons* rule of when a stayed contempt order is final and appealable. If either of these two things occur, the contemnor will have actual notice that the contempt order is enforceable and that incarceration is imminent. If incarceration occurs, the contemnor clearly knows that the judgment has been enforced. If the trial court "takes evidence"—conducts a hearing to see if the

contempt has been purged—and finds that the contempt has not been purged and then reissues a warrant of commitment, the contemnor will have notice of the warrant of commitment by virtue of being present at the hearing.[3]

Here, the January 12, 2010, warrant of commitment was stayed until 10 a.m. January 25, 2010. The warrant of commitment was actually issued on February 1, 2010. The judgment was not final at this time, however, because the court did not conduct a hearing to determine if Pamela had purged her contempt. Pamela filed her first notice of appeal on February 11, 2010. This notice properly was dismissed.

While at a hearing on March 31, 2010, Pamela was served with the warrant and taken into custody. The contempt order was enforced and the judgment was appealable at that time because Pamela was actually incarcerated. Pamela's second notice of appeal was filed April 6, 2010. Rule 81.04(a) requires a notice of appeal to be filed no more than 10 days after a judgment becomes final. Pamela's notice of appeal was filed timely.

### Right to Counsel in a Contempt Proceeding

 Pamela argues that the circuit court erred in entering a judgment of contempt and issuing an order of commitment because the court did not advise her of her right to counsel and did not obtain a voluntary waiver of her right to counsel. Procedural due process requires that in civil, indirect contempt actions,[4] the circuit court "must either (1) predetermine that the of-

---

3. Of course if the judge reissues a warrant of commitment but then stays the warrant again, the judgment of contempt is no more final than it was after the initial stay. When there is a stayed order of commitment, incarceration is not imminent. *Eaton*, 127 S.W.3d at 698.

4. See *Smith v. Pace*, 313 S.W.3d 124, 130–31 (Mo. banc 2010), for an explanation of different types of contempt actions.

fense is of insufficient gravity to warrant jail time; or (2) advise the defendant that he has the right to be represented by counsel." *State ex rel. Family Support Div.-Child Support Enforcement v. Lane*, 313 S.W.3d 182, 187 (Mo.App.2010). Unless the contemnor knowingly and intelligently waives the right to counsel, he or she must "be given adequate opportunity to obtain representation." *Cheatham v. Cheatham*, 101 S.W.3d 305, 309 (Mo.App. 2003) (internal citations omitted). In criminal cases, a knowing and intelligent waiver requires that a defendant be "timely inform[ed] as to the nature of the charges against him, potential sentences if convicted of the offenses, potential defenses he can offer, the nature of the trial proceedings ... and the dangers of proceeding *pro se*." *State v. Black*, 223 S.W.3d 149, 154 (Mo. banc 2007) (quoting *City of St. Peters v. Hodak*, 125 S.W.3d 892, 894 (Mo. App.2004)). *See also* section 600.051, RSMo 2000. The contempt defendant similarly must be informed of what is being alleged, the possible consequences of the contempt proceeding, the nature of trial proceedings in a contempt proceeding and what the defendant is giving up by waiving the right to counsel.[5] *See generally Hunt v. Moreland*, 697 S.W.2d 326, 329 (Mo.App. 1985).

Dennie agrees Pamela had the right to counsel but argues Pamela waived her right to counsel. He asserts that Pamela appeared on October 28, 2009, without counsel and was advised by the circuit court of her right to counsel. The circuit court then granted her a continuance so she could obtain counsel. On December 14, 2009, the parties again appeared before the circuit court. Dennie asserts that, at that point, Pamela informed the court that she was ready to proceed without an attorney.

This Court is faced with the problem that none of what Dennie asserts is reflected in the record. As noted previously, the record contains only (1) the court's judgment of contempt stating that Pamela waived counsel; (2) the judge's statement at the beginning of the hearing that "[Pamela] is present in person, pro se. And there was some conversation at the bench before we started the record;" and (3) Pamela's comment at the end of her testimony that "Well, like I said, I didn't have the money for an attorney...." This is not enough for an appellate court to determine that Pamela knowingly, voluntarily and intelligently waived her right to counsel.

The record reflects, therefore, that the circuit court erred in failing to advise Pamela of her right to counsel and to determine that she made a knowing, voluntary and intelligent waiver on the record. The judge and any counsel present for an opposing party should ensure that a party is advised on the record of his or her right to counsel and make sure that any waiver of this right is made on the record.

## Conclusion

Pamela filed her notice of appeal within 10 days of being incarcerated on the judgment of contempt. Because she was not represented by counsel and no valid waiver

---

5. The issue of whether the circuit court must appoint counsel is not before the Court in this case because Pamela has not claimed to be indigent. Both the eastern district and western district of the court of appeals have held that a contempt defendant has the right to have counsel appointed if he or she is found to be indigent. *See Hunt*, 697 S.W.2d at 330; *Lane*, 313 S.W.3d at 187. In doing so, the court has acknowledged that it is not the public defender's responsibility to provide representation in civil cases, and, therefore, it is the circuit court's responsibility to use its "inherent authority to appoint members of the bar to represent the defendant." *Lane*, 313 S.W.3d at 187.

of her right to counsel appears on the record, the circuit court's judgment of contempt is reversed and the warrant of commitment is set aside. The case is remanded to the circuit court.[6]

PRICE, C.J., TEITELMAN, RUSSELL, BRECKENRIDGE and STITH, JJ., concur.

FISCHER, J., concurs in separate opinion filed.

ZEL M. FISCHER, Judge, concurring.

I concur in the result of the principal opinion. I write separately, however, because I think its holding will continue to create confusion concerning when a civil contempt judgment is enforced and, therefore, final for purposes of determining when the contemnor must file a notice of appeal. In my opinion, the only consistently practical time to consider a civil contempt order enforced and, therefore, final and appealable is when the judgment is actually enforced. In this case and others, when imprisonment is the remedy, the better and traditional rule is that the judgment is actually enforced when the contemnor is incarcerated. *In re Marriage of Crow and Gilmore*, 103 S.W.3d 778 (Mo. banc 2003).[1]

By holding that the time for appeal also begins to run when "the trial court 'takes evidence'—conducts a hearing to see if the contempt has been purged—finds that the contempt has not been purged and then reissues a warrant of commitment," the principal opinion perpetuates the confusion as to when the contemnor has a final judgment, subject to appeal.

For purposes of appeal, a civil contempt order is not final until "enforced."

When "enforcement" occurs depends on the remedy. Two remedies to coerce compliance are compensatory *per diem* fines and imprisonment.

When the remedy is a fine, the contempt order is "enforced" when the moving party executes on the fine. . . .

When the remedy is imprisonment, the traditional rule is that the contempt order is "enforced" when there is "actual incarceration pursuant to a warrant [or order] of commitment."

*Id.* at 781 (citations omitted).

A court conducting "a hearing to see if contempt has been purged" and even the re-issuance of a warrant of commitment following such a hearing does not necessarily mean "that incarceration is imminent" or that the judgment is actually being "enforced" as the principal opinion suggests. Op. at 25. Enforcement by the threat of incarceration is no more imminent than a judgment that imposes a fine that is not executed. For example, courts routinely extend the stay to give the contemnor additional time to purge the contempt or schedule another hearing to see if the contemnor complies with the civil contempt order. These actions do not necessarily enforce the civil contempt order. This Court's prior cases, which are cited in *In re Marriage of Crow and Gilmore*, provided "[w]hen the remedy is imprisonment, the traditional rule is that the contempt is 'enforced' when there is 'actual incarceration pursuant to a warrant [or order] of commitment.'" 103 S.W.3d at 781.[2]

---

6. In her brief, Pamela makes additional arguments as to why the judgment of contempt was in error. Because the judgment was entered in violation of her right to counsel, it is unnecessary to address these arguments.

1. "[A]n incarcerated contemnor is entitled to release on bond pending appeal." *Id.* at 782.

2. Ten separate cases are cited to support this traditional rule of law, while only two cases are cited to support the proposition "[t]his Court has intimated that an order of commit-

I think the better rule would be for this Court to adhere to the "traditional rule" and hold that a contempt order is enforced and, therefore, final and appealable only when the contemnor is incarcerated. This would eliminate any confusion and draw a bright line as to when the time for appeal begins to run. Similarly, this would be consistent with the rule providing that when the remedy for civil contempt is a fine that the contempt order is considered "enforced" and, therefore, final only when the moving party executes on the fine. Additionally, this also would be consistent with the rule regarding the review of a criminal contempt judgment, which is pursued by writ of habeas corpus once the contemnor is incarcerated. *Smith v. Pace*, 313 S.W.3d 124, 129 (Mo. banc 2010).

Applying the traditional rule to the current case, Pamela Carothers was taken into custody on March 31, 2010. Her second notice of appeal, filed on April 6, 2010, was timely because it was within 10 days of the civil contempt order being enforced by her incarceration—thus becoming final. Accordingly, I concur in the result of the principal opinion and the analysis regarding the right to counsel in contempt proceedings.

ment is sufficient to 'enforce' a contempt order." 103 S.W.3d at 781. A departure from the traditional rule did not alter the outcome in *In re Marriage of Crow and Gilmore* and has done nothing to cease any confusion by the litigants and courts in these civil contempt cases.