

# In the
# Missouri Court of Appeals
## Western District

DEANA LEE DAVIS,

                **Respondent,**

v.

MATTHEW CARY DAVIS,

                **Appellant.**

WD77767

OPINION FILED: September 15, 2015

Appeal from the Circuit Court of Cooper County, Missouri
The Honorable Robert M. Liston, Judge

Before Division One:
Cynthia L. Martin, P.J., Joseph M. Ellis, and James Edward Welsh, JJ.

Matthew Davis appeals the circuit court's "Judgment of Contempt and Enforcing and Construing Prior Decree" entered against him as a result of his failure to comply with the judgment dissolving his marriage to Deana Davis. We dismiss the appeal.

### Background

The marriage of Deana Davis ("Mother") and Matthew Davis ("Father") was dissolved on August 19, 2011. The decree awarded sole physical custody of their two children, Paige (then 18) and Courtney (then 19), to Mother and ordered Father to pay child support of $400 per month. In addition, Father was ordered to provide health insurance for the children, to pay half of any uncovered healthcare expenses, and to contribute to the children's college education.

On September 20, 2012, Mother filed a "Motion to Enforce the Judgment." Mother alleged that Father had willfully failed to comply with the dissolution decree. In her six-count petition, Mother sought to: (I) force the sale of the marital residence, (II) distribute the proceeds from the sale, (III) enter a money judgment for half of an IRA account that had been awarded to her, (IV) enter a money judgment for Father's liability for the children's college and medical expenses, including the cost of replacement health insurance, (V) obtain an Order of Contempt to secure compliance with the requests set forth in Counts I through IV, and (VI) modify the child support. In his Answer, Father denied all of Mother's allegations but did not raise any affirmative defenses.

The circuit court scheduled a hearing on Mother's motion for February 26, 2013. Prior to the hearing, Mother dismissed her Count VI to modify child support, and the parties reached an agreement on the sale of the marital residence which led to the dismissal of Counts I and II. Mother thereafter presented evidence in support of her three remaining claims. The hearing was suspended pending receipt of a corrected Petitioner's Exhibit 9 (documentation of the children's college and medical expenses). The matter was re-convened on August 26, 2013, at which time the court received additional testimony and evidence. In the intervening six months between "day one" and "day two" of the trial, the marital home was sold and the net proceeds of $43,089.30 were being held in escrow.[1]

On September 27, 2013, the circuit court entered its judgment on the three remaining counts. As to Count III, the court ordered Father to provide an accounting and sufficient information to effectuate transfer and the creation of a QDRO as to the IRA and other stocks. On Count IV, the court found that Father owed Mother a total of $55,570.14 for delinquent

---

[1]Under the judgment of dissolution, each party was entitled to half of that amount, or $21,544.65.

2

support, including $2,350 in past-due periodic child support, $18,004.33 for medical expenses and replacement medical insurance, and $35,124.75 for the girls' college expenses.[2]

As to Count V, the court found Father in contempt for failure to abide by portions of the dissolution judgment[3] and ordered him "committed to the Cooper County Jail," but suspended that order. The judgment set forth the means by which Father could purge himself of the contempt[4] and gave him until December 31, 2013, either to do so or to "produce a plan for payment of same within one year thereafter to avoid going to jail."

On January 24, 2014, new counsel for Father filed a "Motion to Vacate, Reopen, or Correct the Judgment of Contempt." In it, Father argued for the first time that the children were emancipated at age eighteen because they failed to submit the documentation required by section

---

[2]We recognize that there is an unexplained $91.06 discrepancy in these figures.

[3]The court apparently found Father in contempt for failure to pay the periodic child support and failure to provide insurance for the children because the court said that, since the other amounts were not determined until the entry of the judgment, it would not be appropriate to hold Father in contempt for failure to pay those amounts. The exact words of the judgment are as follows:

> Judgment construing and enforcing the prior decree as requested by Count III of the petition is entered in favor of [Mother] and against [Father] . . . in the amount of [$55,570.14,] which sum is inclusive of the unpaid amount of periodic child support ordered. ***Contempt does not lie for the remaining sums because the judgment lacked sufficient certainty*** and [Mother] was remiss for [not] having communicated the costs of medical and education to [Father]. [Emphasis added.]

[4]Specifically, the judgment stated that Father may "purge himself by doing the following":

> a. Signing all documents requested by [Mother], and/or the Monarch Title Company, to transfer all of [Father]'s interest in the sum from the sale of the house to [Mother]. [Mother] shall thereby receive all of the proceeds from the sale, and shall credit [Father] for his portion [paid] in partial satisfaction of this judgment;
>
> b. Requesting transfer of [Father]'s stock, and IRA, including cash redemption, in a sum sufficient to pay the balance of the judgment awarded herein[;]
>
> c. Paying the balance of the judgment remaining after the above redemptions and payments, in full to [Mother] on or before December 31, 2013, or produce a plan for payment of the same within one year by that date. [Mother]'s counsel shall notice the case for review of contempt order on the court's January docket and [Father] shall appear this date in the event the Court's judgment remains unpaid.

3

452.340.5, RSMo Cum. Supp. 2012, for reimbursement of their college expenses. Thus, according to Father, he did not owe *any* child support, educational expenses, or medical expenses that accrued after the children's eighteenth birthdays. Father also alleged that the court erred in failing to make a finding that he "has the present ability to purge himself of contempt."

The circuit court heard arguments on Father's motion on April 4, 2014.[5] The court thereafter entered an amended judgment (entitled "Findings and Orders") on April 30th. The court rejected Father's claims regarding emancipation on the basis that the "first suggestion that the children were unqualified to continue to receive support after age 18 was first raised in the after-trial motion filed." The court explained that "[the court] cannot be held to determine an issue without even a hint or suggestion, much less with a complete dearth of evidence that a proposition is true." Thus, the court rejected Father's challenge to the support amounts that he owed but modified its earlier decree as to the conditions for purge, stating:

> With regard to the alleged failure of the Court to make a determination of the ability of [Father] to pay the Court ordered sums, the Court did indeed determine that money held in escrow from the sale of the parties' home would be available to purge his contempt. However the matter was not addressed in the judgment. This money was and the Court believes still is available to [Father].

The court ordered Father to "release so much of these funds as necessary to satisfy the judgment on or before May 26th, 2014 at 9:00 A.M." or "report to the Cooper County jail to serve an indeterminate sentence or until he shall have purged himself of contempt, sentence to commence at that same hour and date."

On May 16, 2014, the circuit court granted Father's motion to fix his appeal bond at $55,000 and also "reset" Father's deadline either to satisfy the judgment or report to the county jail to July 25, 2014. On that date, Father appeared before the court and posted an appeal bond in

---

[5]This court has not been provided a transcript from that hearing.

4

the amount of $55,000. As best we can determine from the scant record provided us, there was no hearing after May 26, 2014, to determine whether Father had purged himself of the contempt or had the present ability to do so, the court issued no actual order of commitment or warrant of commitment for Father's arrest, and Father was never incarcerated.

## Discussion

Father raises three points on appeal. His first two points challenge the circuit court's judgment of civil contempt for his failure to pay his portion of the children's medical and college expenses. The third point challenges what Father terms the court's "order of commitment."

Before we address the merits of Father's points, we first must determine whether we have jurisdiction to entertain them. It is the duty of this court to inquire into and determine its jurisdiction *sua sponte*. *Relaxation, Inc. v. RIS, Inc.*, 452 S.W.3d 743, 750 (Mo. App. 2015). Here, that duty requires us to determine whether the circuit court's judgment is final for purposes of appeal. *See In re Marriage of Crow and Gilmore,* 103 S.W.3d 778, 780 (Mo. banc 2003). If a judgment of contempt is not final, "this Court lacks jurisdiction and must dismiss the appeal." *Id*.

With this in mind, we begin our analysis with Point III. There, Father contends that "[t]he trial court erred in entering its order of commitment and directing that Father be held in the Cooper County Jail and that he had the present ability to pay $55,580.14 by May 26, 2014."

In a case, such as this, where a noncustodial parent is not paying the child support ordered in a dissolution judgment, the custodial parent must take some action to enforce the judgment. *See* 21 Mo. Prac., *Family Law* § 14:14 (3d ed. 2008). "One such enforcement mechanism is an action for civil contempt." *Id*. The purpose of civil contempt is to "benefit a party for whom an order, judgment, or decree was entered" by coercing compliance with the relief granted. *Crow*, 103 S.W.3d at 780.

5

A party establishes a *prima facie* case for civil contempt by proving: (1) that the contemnor has an obligation to pay a specific amount or perform an action as required by the court's judgment, and (2) that the contemnor failed to meet this obligation. *See Lyons v. Sloop*, 40 S.W.3d 1, 10-11 (Mo. App. 2001). Once a *prima facie* case is established, the alleged contemnor "bears the burden of proving that he is financially unable to pay and that the inability to pay is not the consequence of his own intentional and contumacious conduct." *Id.* at 11. If the contemnor is unable to satisfy that burden, the court may issue a judgment of contempt. A party held in civil contempt may then (1) purge himself of the contempt by complying with the trial court's order (making the case moot and unappealable), or (2) appeal the judgment of contempt *once it becomes final*. *Emmons v. Emmons*, 310 S.W.3d 718, 722 (Mo. App. 2010); *see also Carothers v. Carothers,* 337 S.W.3d 21, 24 (Mo. banc 2011).[6]

The question of *when* a civil contempt judgment becomes "final" for purposes of appeal was definitively addressed by our Supreme Court in *Crow*, 103 S.W.3d 778, and, more recently, in *Carothers*, 337 S.W.3d 21. As explained in those cases, a civil contempt order is interlocutory when it is entered and "is not final until it is 'enforced.'" *Carothers*, 337 S.W.3d at 24; *Crow*, 103 S.W.3d at 781. When "enforcement" occurs depends upon the remedy. *Crow*, 103 S.W.3d at 781. If the remedy is imprisonment, the traditional rule is that the contempt order is "enforced" when there is "*actual* incarceration pursuant to a warrant [or order] of commitment."[7] *Id.* (emphasis added). At this point, the Court explained, "the [interlocutory] contempt order

---

[6]Although not expressly enumerated as "appealable" in section 512.020 (the statute that governs the right of appeal in civil actions), our Supreme Court has consistently recognized the right to appeal a judgment of civil contempt *once it is final*. *See, e.g., Carothers,* 337 S.W.3d at 24; *Teefey v. Teefey*, 533 S.W.2d 563, 565 (Mo. banc 1976); *State ex rel. Chicago, B. & Q. R. Co. v. Bland*, 88 S.W. 28 (Mo. banc 1905).

[7]When the remedy is the imposition of a fine, enforcement occurs "when the moving party executes on the fine." *Crow*, 103 S.W.3d at 781.

6

changes from mere threat to 'enforcement,' and becomes final and appealable." *Id.* at 782 (citing Rule 81.04(a); § 512.050, RSMo 2000).

In order to incarcerate the contemnor, the circuit court must issue *both* a judgment of contempt and a proper order of commitment.[8] *See Bruns v. Thomas*, 919 S.W.2d 302, 303-04 (Mo. App. 1996); *Owsley v. Owsley*, 693 S.W.2d 897, 899 (Mo. App. 1985). Both the judgment of contempt and the order of commitment must contain a "recital of the particular facts and circumstances that constitute the contempt" and a declaration of the "conditions to be met to purge the contempt." *Brown v. Brown,* 670 S.W.2d 167, 170 (Mo. App. 1984). A contempt judgment or commitment order that fails to set forth facts and circumstances constituting the offense, but merely states legal conclusions, is insufficient to support a commitment. *Bruns*, 919 S.W.2d at 303. This is because the contemnor is his own jailer, and the judicial declaration of facts informs him of conditions to be met to purge the contempt and thereby set himself free of the commitment. *Brown*, 670 S.W.2d at 170. In addition, in order to support a civil contempt commitment, the court "must make a finding that the contemnor has the present ability to purge himself of the contempt and thereby has the key to the jailhouse door." *Lyons*, 40 S.W.3d at 12.

Based on the foregoing, it is clear that the civil contempt judgment in this case remains interlocutory, in that it has never been enforced either via a warrant of commitment or actual confinement. Despite Father's assertion that the circuit court erred in entering an "order of commitment," as best we can determine from the record provided, no order of commitment was ever issued by the circuit court. There is not one included in the record on appeal,[9] and we do

---

[8]For an example of a warrant of commitment, *see* Mo. Remedies § 9.56 (MoBar 2006).

[9]The appellant is responsible for filing the record on appeal, which "shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented." Rule 81.12(a),(c).

not find reference to one in the court's docket entries. Thus, although the contempt judgment contained a *threat* of incarceration, no warrant of commitment to jail was ever entered. As explained in *Crow* (another case where no order of commitment was issued), until incarceration is ordered and acted upon, the contempt order is not "enforced," and remains interlocutory and unappealable. 103 S.W.3d at 782.

*Crow* also confirms that the posting of an appeal bond does not change that. In *Crow*, after the "purging period" had passed, the circuit court approved a supersedeas appeal bond by the husband, but the Supreme Court explained:

> ***Posting a supersedeas appeal bond does not enforce a contempt order. Rather, as Husband admits, it stays enforcement of a judgment while an appeal is pending***. Here, the contempt order is not yet appealable. A bond staying an unappealable contempt order has no effect.

*Id*. (citing Rule 81.09(a); § 512.080, RSMo 2000).

In this case, Father appeared before the court on July 25, 2014, and posted an appeal bond in the amount of $55,000 purportedly to secure his release. However, as stated, there is no indication that the court issued a warrant of commitment for Father's arrest, and there is no indication that Father was ever incarcerated. Thus, here, as in *Crow*, the unenforced contempt judgment is not final and appealable, and Father's appeal must be dismissed. *See id*. at 780-82 (if a contempt judgment is not final, "this Court lacks jurisdiction and must dismiss the appeal").

Based on the foregoing, we find that the judgment of contempt in this case is not final for purposes of appeal. We dismiss the appeal.

/s/ JAMES EDWARD WELSH
James Edward Welsh, Judge

All concur.

8