

# Missouri Court of Appeals

## Southern District

### Division One

| | |
|---|---|
| In re the Marriage of Tracy Kimball and Richard Kimball | ) ) ) |
| TRACY KIMBALL n/k/a TRACY COOKSON, | ) ) ) |
| Petitioner-Respondent, | ) ) |
| vs. | ) ) |
| RICHARD KIMBALL, | ) ) |
| Respondent-Appellant. | ) |

No. SD35518

**Filed: April 26, 2019**

APPEAL FROM THE CIRCUIT COURT OF SCOTT COUNTY

Honorable S. Rob Barker, Special Judge

**APPEAL DISMISSED IN PART AND JUDGMENT AFFIRMED IN PART**

Richard Kimball ("Former Husband") appeals from the circuit court's order and judgment reviving an amended judgment of dissolution, and finding Former Husband "to be in contempt of court" and awarding Tracy Cookson ("Former Wife") "attorney fees for [Former Husband's] contempt in the sum of $2,457.50, plus all court costs." Former Husband raises seven points – we dismiss the appeal as to points one, three, four and seven because the points challenge the order and judgment's currently, interlocutory and

1

unappealable finding Former Husband is in contempt of court; deny the remaining points; and affirm the order and judgment as to its revival of the amended judgment of dissolution.

## Facts and Procedural Background

On April 15, 2016, Former Wife filed three separate motions in this dissolution proceeding:  (1) a motion to modify, (2) a motion for *scire facias*, which sought to revive an amended judgment of dissolution filed on January 9, 2002, that allocated marital debt in the amount of $191,291.12 to Former Husband and directed Former Husband to pay that amount to Former Wife in monthly payments over almost sixteen years,[1] and (3) a motion for contempt that requested Former Husband be ordered to show cause why he should not be held in contempt for his failure to comply with the judgment.  The motion to modify was resolved by agreement of the parties.[2]  The circuit court conducted an evidentiary hearing on November 16, 2017, for the remaining two motions.

---

[1] Effective January 1, 1988, Rule 74.09 replaced Rule 74.36 with respect to the procedure for reviving a judgment. ***White Industries, Inc. v. New England Propeller Service, Inc.***, 881 S.W.2d 243, 245 (Mo.App. W.D. 1994).  Prior to 1988, Rule 74.36 provided:

> The plaintiff or his legal representative may, at any time within ten years, sue out a *scire facias* to revive a judgment and lien; but after the expiration of ten years from the rendition of the judgment no *scire facias* shall issue. The *scire facias* may be in the form of an order to show cause issued on motion *ex parte* by the clerk or judge of the court.

***Id.***  In this appeal, the circuit court and the parties treated the motion for *scire facias* as a motion to revive the amended judgment of dissolution.  This treatment is consistent with the rule that revival of a judgment under section 516.350 and Rule 74.09 is not required to be based on a motion specifically titled "motion to revive judgment," "but rather that one parent be given notice through personal service that the other parent still intends to enforce the decree." ***Hutson v. Buhl***, 329 S.W.3d 756, 759 (Mo.App. E.D. 2011) (allowing revival based on motions including motions to modify, and motions for contempt).  Former Husband did not challenge before the circuit court and does not challenge on appeal that he was given notice through personal service of the motion for *scire facias* that Former Wife still intended to enforce the amended judgment of dissolution's directive that Former Husband pay his allocated portion of marital debt to Former Wife in monthly payments over time.

[2] The parties agreed that Former Husband's child support would increase from $553 to $700 each month effective December 1, 2017, and that the parties would split equally their child's college expenses.

2

Former Wife testified as follows. Former Husband did not "fully compl[y]" with the amended judgment of dissolution. In particular, Former Husband did not make $1,000 monthly payments to her on a debt in the original amount of $191,291.12, as required by numbered paragraph 4 of the judgment. The total payment on the debt "from 2003 through 2009" was $22,141.96. The payments "from 2003 to 2005" totaled $11,090.50, and were obtained "through a garnishment" on Former Husband's employer Nucor Steel in Blytheville, Arkansas. In 2008 and 2009, Former Wife obtained additional payments through "garnishment of [Former Husband's] wages." The last amount garnished from Former Husband was $348.36 in April 2009. The amounts shown on Exhibit 3 all were obtained through "garnishment actions that [Former Wife] made in this case." Former Wife identified Former Husband's 2013, 2014 and 2015 "tax return[s]," which showed "total income" of $48,337, $66,397 and $77,004, respectively. Former Husband did not object to any of this testimony.

Subsequently, when Exhibit 3 and another exhibit were offered for admission into evidence, Former Husband objected to Exhibit 3 and the other exhibit on the ground the exhibits had not been produced in response to a request for production. Former Husband also objected to Exhibit 3 "as best evidence rule," foundation, and "I do know that there was a letter attached to Exhibit 3 that looks like they were taken from hearsay from somebody that told her something and then put down." The circuit court and counsel then had the following exchange:

> [Former Wife's counsel]: Judge, we have produced all relevant documents in this case. I gave her a copy of the exhibits before we started today. . . . I think she can testify as to what money she has received, so I don't think that [opposing counsel's] objections are appropriate and should be denied.

3

THE COURT: Well, I mean, it's – it's still your witness. And if you want to -- and, honestly, it's one way or the other. Either we get it -- we get it on paper or she's going to testify to it.

[Former Husband's counsel]: I know.

THE COURT: Or –

[Former Husband's counsel]: I'm making my record, Your Honor.

THE COURT: I'll tell you what I'll do. I'll allow you to continue -- as to the objection to [the other exhibit], I will overrule that objection. And then as to 3 I'll allow you to have your client testify as to the payments that were -- that were made, which I think she's made – she's made some testimony, but if you want to be more specific I'll allow you to continue to ask questions.

[Former Wife's counsel]: I'll do that, Judge.

Former Husband did not object further, and Former Wife then testified she received: (1) $1,645.52 by garnishment in July 2008, (2) $1,045.10 by garnishment in August 2008, (3) $1,741.85 by garnishment in September 2008, (4) $1,393.47 by garnishment in October 2008, (5) $1,045.10 by garnishment in November 2008, (6) $1,393.48 by garnishment in December 2008, (7) $696.74 by garnishment in January 2009, (8) $1,045.10 by garnishment in February 2009, (9) $696.74 by garnishment in March 2009, and (10) $348.36 by garnishment in April 2009. The 2008 garnishments were on Nucor Steel. Former Husband never made any "voluntar[y]" payments on the debt – the only payments received were through garnishments. At that point, Former Wife's counsel again offered Exhibit 3 and the circuit court overruled Former Husband's objection and admitted Exhibit 3.

On cross examination and then rebuttal, Former Wife indicated that the payments she received were through the circuit court and a bankruptcy court in which Former Husband was seeking relief.

4

Counsel for Former Wife than called Former Husband as a witness.  Former Husband testified as follows.  Former Husband acknowledged that he had never made any payments on the debt to Former Wife voluntarily.  Former Husband worked for Nucor Steel during 2008 and 2009, but never had any wages garnished during that period.  He did not recall the exact years, but he did have wages garnished before 2005.  Former Husband worked for Nucor Steel in 2001 through 2010.  Former Husband then worked for Lankheit Farms, Delta, Stallings Farms, Bechtel, CB&I, and was working for Bechtel at the time of the hearing.  Former Husband's wages on his tax returns are correct to the best of his knowledge.  Former Husband did not make any payments on the debt to Former Wife under his Chapter 13 plan.

On combination cross/direct examination by his counsel, Former Husband indicated there was a garnishment on his "bank account" in 2003 and "some [additional] garnishments made to my bank account . . . before 2005."  Former Husband was not "aware of any other garnishments placed on [his] bank – on [his] wages" since 2005.  Former Husband's Chapter 13 bankruptcy was "dismissed for nonpayment."  Former Husband has "several judgments entered against [him] for money owed" in the amount of $41,081.24 (exclusive of the debt owed Former Wife), and has federal and state tax liens.  Former Husband also owes the federal government "probably around 50 or $60,000."  Former Husband's "current income and expense statement" shows "average monthly gross income of about $11,000," and "average monthly expenses of abut [$]10,148."  Former Husband "didn't refuse [to pay the debt to Former Wife]; [he] just didn't have it to pay."  Toward the end of Former Husband's testimony, the circuit court took "judicial

5

notice" "of its own file" at the request of Former Husband's counsel to "take judicial notice of the garnishments that were previously done in the original action in this case."

At the conclusion of the hearing, the circuit court took the motions under advisement and requested written argument and proposed findings and conclusions from the parties. Subsequently, on January 30, 2018, the circuit court entered an order and judgment reviving the amended judgment of dissolution and finding Former Husband "to be in contempt of court" and awarding Former Wife "attorney fees for [Former Husband's] contempt in the sum of $2,457.50, plus all court costs." The circuit court also found that (1) the last payment on Former Husband's debt under the amended judgment of dissolution was "garnished in April 2009," (2) the "collection proceedings as late as April, 2009 . . . revived" the amended judgment of dissolution and, relying on *Martin v. Martin*, 979 S.W.2d 948 (Mo.App. S.D. 2006), "by testimony was entered upon the Court record . . .," and (3) the "Motion to Revive Judgment was timely filed within ten (10) years from April, 2009."

## Analysis

### *Points I, III, IV and VII – Contempt*

In Former Husband's first, third, fourth and seventh points, he raises various challenges to the circuit court finding him "to be in contempt of court." We dismiss Former Husband's appeal as to these points because the circuit court's order and judgment finding Former Husband to be in civil contempt of the court is an interlocutory and unappealable order until it is enforced.

6

"[O]ur Supreme Court has consistently recognized the right to appeal a judgment of civil contempt" once the judgment is final. ***Davis v. Davis***, 475 S.W.3d 177, 182 n.6 (Mo.App. W.D. 2015). As the Western District explained in ***Davis***:

> The purpose of civil contempt is to "benefit a party for whom an order, judgment, or decree was entered" by coercing compliance with the relief granted. *[In re Marriage of] Crow [and Gilmore]*, 103 S.W.3d [778,] 780 [Mo. banc 2003)].
>
> . . . .
>
> A party held in civil contempt may then (1) purge himself of the contempt by complying with the trial court's order (making the case moot and unappealable), or (2) appeal the judgment of contempt *once it becomes final*. *Emmons v. Emmons*, 310 S.W.3d 718, 722 (Mo.App. 2010); *see also Carothers v. Carothers*, 337 S.W.3d 21, 24 (Mo. banc 2011).
>
> The question of *when* a civil contempt judgment becomes "final" for purposes of appeal was definitively addressed by our Supreme Court in *Crow*, 103 S.W.3d 778, and, more recently, in *Carothers*, 337 S.W.3d 21. As explained in those cases, a civil contempt order is interlocutory when it is entered and "is not final until it is 'enforced.'" *Carothers*, 337 S.W.3d at 24; *Crow*, 103 S.W.3d at 781. When "enforcement" occurs depends upon the remedy. *Crow*, 103 S.W.3d at 781. If the remedy is imprisonment, the traditional rule is that the contempt order is "enforced" when there is "actual incarceration pursuant to a warrant [or order] of commitment." *Id*. (emphasis added). At this point, the Court explained, "the [interlocutory] contempt order changes from mere threat to 'enforcement,' and becomes final and appealable." *Id*. at 782 (citing Rule 81.04(a); § 512.050, RSMo 2000).

***Davis***, 475 S.W.3d at 181-82 (internal footnotes omitted). The Western District also noted that "[w]hen the remedy is the imposition of a fine, enforcement occurs 'when the moving party executes on the fine.' *Crow*, 103 S.W.3d at 781." ***Id.*** at 182 n.7; *see also* ***Smotherman v. White***, 556 S.W.3d 655 (Mo.App. S.D. 2018) (similar statement of the rules for civil contempt).

In this appeal, there is nothing in Former Husband's brief or the record to suggest that Former Wife has sought to enforce the circuit court's finding of civil contempt. As a

result, we dismiss Former Husband's appeal as to these points because the circuit court's finding of civil contempt currently is an unappealable, interlocutory order.[3]

*Point II – Revival of Judgment*

In his second point, Former Husband asserts that the circuit court "erred as a matter of law by denying [Former Husband's] motion to dismiss [Former Wife's] motion for *scire facias* because [Former Wife's] motion was untimely, and therefore, the Judgment could no longer be revived." We disagree, and deny this point.

Standard of Review

The circuit court's order and judgment granting Former Wife's motion to revive the amended judgment of dissolution is a "special order after final judgment in the cause" that is appealable under section 512.020.5. ***Unifund CCR Partners v. Abright***, 566 S.W.3d 594, 594 n.2 (Mo. banc 2019); ***Abbott v. Abbott***, 415 S.W.3d 770, 771 n.1 (Mo.App. W.D. 2013). Further:

> The trial court's judgment will be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. Statutory interpretation is an issue of law that this Court reviews de novo.

***Crockett v. Polen***, 225 S.W.3d 419, 419-20 (Mo. banc 2007) (internal footnotes omitted); *cf*. ***Abbott***, 415 S.W.3d at 721 n.2 (declining to apply the ***Murphy v. Carron***, 536 S.W.2d 30, 32 (Mo. banc 1976) standard without mentioning ***Crockett v. Polen***, and in an appeal where the only issue presented was "a purely legal question").

Discussion

Section 516.350.1, RSMo 2016, provides in relevant part:

---

[3] Although the circuit court's order and judgment awarding attorney fees and costs to Former Wife may be appealable separately from the circuit court's order and judgment finding Former Husband to be in contempt, Former Husband does not challenge the award of attorney fees and costs in this appeal. ***Smotherman***, 556 S.W.3d at 656 n.1.

1.  Every judgment, order or decree of any court of record of the United States, or of this or any other state, territory or country, *except for any judgment, order, or decree awarding child support or maintenance or dividing pension, retirement, life insurance, or other employee benefits in connection with a dissolution of marriage, legal separation or annulment which mandates the making of payments over a period of time or payments in the future,* shall be presumed to be paid and satisfied after the expiration of ten years from the date of the original rendition thereof, or if the same has been revived upon personal service duly had upon the defendant or defendants therein, then after ten years from and after such revival*, or in case a payment has been made on such judgment, order or decree, and duly entered upon the record thereof, after the expiration of ten years from the last payment so made,* and after the expiration of ten years from the date of the original rendition or revival upon personal service, or from the date of the last payment, such judgment shall be conclusively presumed to be paid, and no execution, order or process shall issue thereon, nor shall any suit be brought, had or maintained thereon for any purpose whatever[.]

(emphasis added).  Rule 74.09, Missouri Court Rules (2018), further provides in relevant part:

> **(a)  When and by Whom.**  A judgment may be revived by order of the court that entered it pursuant to a motion for revival filed by a judgment creditor within ten years after entry of the judgment or the last prior revival of the judgment.
>
> **(b)  Order to Show Cause.**  Upon the filing of a motion of revival of a judgment, an order shall issue to the judgment debtor to show cause on a day certain why such judgment should not be revived.  The order to show cause shall be served pursuant to Rule 54 on the judgment debtor, his successors in interest, or his legal representatives. . . .

In this appeal, the amended judgment of dissolution allocated marital debt in the amount of $191,291.12, to Former Husband and directed Former Husband to pay that amount to Former Wife in monthly payments over almost sixteen years.  This debt was not an award of "child support or maintenance or dividing pension, retirement, life insurance, or other employee benefits."  As a result, this judgment debt was subject to revival under section 516.350.1 and Rule 74.09.  *See* ***Beck v. Fleming***, 165 S.W.3d 156,

9

159, 158-59 (Mo. banc 2005) (for a judgment not excluded from the operation of subsection 1 of section 516.350, it does not matter that the judgment awards periodic or future payments).

The circuit court found that the judgment debt was revived by payments on the judgment debt that Former Wife garnished from Former Husband's employer, Nucor Steel, that were "entered upon the Court record" "with the last sum garnished in April 2009." The circuit court further found that Former Wife's motion to revive the judgment was filed within ten years of April 2009, and again revived the judgment debt. The circuit court correctly applied the law in concluding that payments garnished from an employer and entered on the record of the judgment within ten years of the judgment's rendition revived the judgment under section 516.350.1. **Unifund CCR Partners**, 566 S.W.3d at 595-96. The circuit court further correctly applied the law in concluding that a motion to revive the judgment filed within ten years of the last revival of the judgment debt by payment in April 2009 again revived the judgment debt under Rule 74.09. **Id.**[4]

---

[4] Former Husband's argument under this point appears entirely divorced from the point's text and preserves nothing for review. The argument appears to assert that the circuit court erred as a matter of law in (1) not issuing an order to show cause when Former Wife filed her motion for *scire facias*, and (2) requiring Former Husband to defend Former Wife's motion for contempt before ruling on her motion for *scire facias*. As explained earlier, revival of a judgment under section 516.350 and Rule 74.09 is not required to be based on a motion specifically titled "motion to revive judgment," "but rather that one parent be given notice through personal service that the other parent still intends to enforce the decree." **Hutson v. Buhl**, 329 S.W.3d 756, 759 (Mo.App. E.D. 2011) (internal citation omitted) (allowing revival based on motions including motions to modify, and motions for contempt); *see also* **Elliott v. Cockrell**, 943 S.W.2d 328, 330 (Mo.App. E.D. 1997) ("[T]he only pertinent issues in a scire facias proceeding to revive a judgment are whether the judgment creditor initiated the proceeding within the prescribed time of ten years; whether service, either personal or by publication, was obtained on the judgment debtor; whether the judgment existed; and whether the judgment was satisfied."). Former Husband did not challenge before the circuit court and does not challenge on appeal that he was given notice through personal service of the motion for *scire facias* that Former Wife still intended to enforce the amended judgment of dissolution's directive that Former Husband pay his allocated portion of marital debt to Former Wife in monthly payments over time. Former Husband also was provided an evidentiary hearing to present any defenses he might have to Former Wife's motion for *scire facias*. Further, Former Husband does not refer us to, and we are not aware of, any authority that requires the circuit court to rule on a motion to revive a judgment before hearing evidence on, and requiring a party to defend, a motion for contempt of that judgment.

*Point V – Hearsay*

In his fifth point, Former Husband claims the circuit court "erred as a matter of law by overruling [Former Husband's] objection to [Former Wife's] Exhibit 3 because the exhibit and amounts contained therein were inadmissible hearsay." We deny this point because any error in the admission of Exhibit 3 did not prejudice Former Husband. Former Wife testified without objection at the hearing to the dates and amounts of payments garnished from Former Husband's employer Nucor Steel in Arkansas. Even if admission of Exhibit 3 was error, Exhibit 3 was entirely cumulative to Former Wife's unobjected to testimony, and admission of Exhibit 3 did not prejudice Former Husband. *Freight House Lofts Condo Association v. VSI Meter Services, Inc.*, 402 S.W.3d 586, 593 (Mo.App. W.D. 2013) ("Even assuming, arguendo, . . . that the trial court erred . . ., '[t]he improper admission of hearsay evidence requires reversal [only] if such evidence is prejudicial.' *Saint Louis Univ. v. Geary*, 321 S.W.3d 282, 291 (Mo. banc 2009). 'A complaining party is not entitled to assert prejudice if the challenged evidence is cumulative to other related admitted evidence.' *Id*. at 292 (internal quotation omitted). 'Cumulative evidence is additional evidence that reiterates the same point.' *Id*."); *see also Martin v. Martin*, 979 S.W.2d 948, 952 (Mo.App. S.D. 1998) ("Relevant evidence received without objection may properly be considered, although it would have been excluded on proper objection. Its probative worth and effect are for the trier of fact." (internal citations omitted)).

---

Former Husband makes similar assertions in the course of his argument under his third point relied on relating to the circuit court's order and judgment finding Former Husband to be in contempt.

*Point VI – Substantial Evidence*

In his sixth point, Former Husband contends the circuit court's "judgment is not support[ed] by substantial evidence as the judgment includes statements of fact that were not produced at trial." In his brief, Former Husband argues:

> In the Order and Judgment, it states in Paragraph 5: "That Petitioner registered the foregoing judgment in the State of Arkansas and garnished Respondent's wages at Nucor Steel, his former employer, for a total of $11,051.46, with the last sum garnished in April, 2009." . . . This evidence, however, was not presented at trial.

It is correct that Former Wife did not testify specifically that she registered the amended judgment of dissolution in Arkansas. However, Former Wife did testify without objection at the hearing to the dates and amounts of the payments garnished from Former Husband's employer Nucor Steel in Blytheville, Arkansas. From this testimony, the circuit court reasonably could have inferred that the amended judgment of dissolution was registered in Arkansas in order to support the garnishment of Former Husband's employer Nucor Steel in Blytheville, Arkansas.[5] *See* **Martin**, 979 S.W.2d at 351-52 (circuit court may determine the facts of payment and entry upon the record of the judgment based on testimony that was received without objection). We deny Former Husband's sixth point.

Former Husband's appeal is dismissed as to his challenges to the circuit court's order and judgment finding him in contempt, and the circuit court's order and judgment reviving the amended judgment of dissolution is affirmed.

---

[5] This same evidence also supports a reasonable inference that payments obtained through garnishment were "duly entered upon the record" of the amended judgment of dissolution in Arkansas after it was registered in Arkansas – a finding that Former Husband challenges in the course of his argument under his first and third points relied on relating to the circuit court's order and judgment finding Former Husband to be in contempt.

Nancy Steffen Rahmeyer, J. – Opinion Author

Don E. Burrell, P.J. – Concurs

Gary W. Lynch, J. – Concurs