

# In the Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| VICTORIA FRAWLEY, | ) | |
| Respondent, | ) | **WD83397 Consolidated with** |
| | ) | **WD83442** |
| v. | ) | |
| | ) | |
| MATTHEW J. FRAWLEY, | ) | FILED: **August 11, 2020** |
| Appellant. | ) | |

## APPEAL FROM THE CIRCUIT COURT OF PLATTE COUNTY
### THE HONORABLE W. ANN HANSBROUGH, JUDGE

### BEFORE DIVISION THREE: GARY D. WITT, PRESIDING JUDGE,
### LISA WHITE HARDWICK AND THOMAS N. CHAPMAN, JUDGES

In consolidated appeals, Matthew J. Frawley ("Father") appeals from the modification judgment finding him in contempt of the child support provisions of the judgment dissolving his marriage to Victoria L. Frawley ("Mother"). He contends that the remedy of contempt was not requested in Mother's modification pleadings; the court erred in admitting two exhibits; the evidence was insufficient to support the court's findings concerning his contumacious conduct; and the trial judge erred in not recusing herself. Additionally, Father asserts that the court erred in issuing the warrant of commitment and order for release of bond because he claims it did so without notice and without finding that he had the present

ability to purge himself of the contempt. Because Father's notices of appeal were untimely filed, we dismiss the appeals.

FACTUAL AND PROCEDURAL HISTORY

Father and Mother's marriage was dissolved in 2013. Pursuant to the dissolution judgment, Mother was awarded sole legal and sole physical custody of the parties' two children, Father was awarded visitation "at all reasonable times and places to be determined by the Mother," and Father was ordered to pay child support in the amount of $505 per month.

In 2016, Father filed a motion to modify the child custody and child support provisions of the dissolution judgment. In his motion, Father requested that the court modify Mother's award of sole legal and sole physical custody to award the parties joint legal and joint physical custody and decrease his child support obligation. Mother filed a counter-motion to modify seeking to increase child support.

While the motions to modify were pending, Mother filed a motion in January 2017 to hold Father in contempt for failing to satisfy his existing child support obligation. In her contempt motion, Mother alleged that Father willfully failed and refused to comply with the dissolution judgment's order that he pay half of the children's uninsured medical expenses and extracurricular expenses. Father filed an answer to Mother's contempt motion in which he denied that he was responsible for the amounts Mother alleged. The court entered an order directing Father to appear before the court on April 18, 2017, to show cause why

2

he should not be held in contempt.  The show cause hearing was later continued to the date of trial on the motions to modify.

A bench trial was held on the motions to modify and Mother's motion for contempt on December 11, 2017, February 15, 2018, March 7, 2018, August 13, 2018, November 19, 2018, and November 26, 2018.[1]  In July 2018 and November 2018, Father filed motions requesting that the trial judge recuse herself based upon adverse rulings the court made during trial.  Both motions were denied.  The court entered its modification judgment on January 3, 2019.  In its judgment, the circuit court declined to modify its award of sole legal and physical custody to Mother but did modify Father's visitation to allow him specific periods of supervised visitation.  The court increased Father's child support obligation to $554 per month because Father's income had increased and ordered Father to pay Mother $10,000 in attorney fees and two-thirds of the guardian ad litem fees.

The court held Father in contempt for failing to pay his share of the children's previously incurred extracurricular and uninsured medical expenses.  Specifically, the court found that Father owed Mother $6,352.03 for his share of the extracurricular and uninsured medical expenses, that Father had the ability to pay these expenses, and that he willfully and maliciously refused to pay them.  The court ordered Father to purge himself of the contempt by mailing a payment of $200 per month, beginning January 15, 2019, to Mother until the amount was

---

[1] Father, who is an attorney, represented himself at trial and in this appeal.

3

paid in full. The court further ordered that Father's failure to make such payments could result in his incarceration in the Platte County Detention Center until such time as he purged himself of the contempt.

Father appealed the modification judgment to this court in case number WD82442. While that appeal was pending, Mother filed a motion for a commitment order and a motion to execute on the judgment of contempt on February 19, 2019. In response, Father filed an answer asserting that the contempt order in the modification judgment was "unethical and void" and not supported by substantial evidence. Father also filed a separate motion to quash Mother's motion for a commitment order, arguing that the circuit court lost jurisdiction to hear the motion after he filed his notice of appeal.

Mother noticed up her motion for commitment order for hearing on March 14, 2019. Father responded by filing a "Notice and Application" in which he informed the court that he would not be available for the March 14, 2019 hearing[2] and asserted that the court lacked jurisdiction because of his pending appeal of the modification judgment. He requested that the court cancel the March 14, 2019 hearing. In the alternative, he asked that the court disqualify the judge and reassign the case to another judge or transfer venue to either Cole County, where he resided, or Clay County, where Mother resided, because he alleged that Platte County was an inconvenient forum.

---

[2] Father told the court he would not be available to appear before it prior to June 14, 2019, "due to work, family, and preparing for the current appeal."

4

The court held the hearing on Mother's motion for a commitment order on March 14, 2019. Father did not appear. The court found Father in contempt but did not enter a commitment order at that time. The case was continued to June 13, 2019, for further hearing on the issue of Father's contempt. After the March 14, 2019 hearing but on the same day, Father filed another "Notice and Application" in which he acknowledged the contempt hearing had been held in his absence, that he was found in contempt, and that the court declined to issue a warrant of commitment at that time. Father again argued that the court lacked jurisdiction to hear the contempt motion due to the pending appeal, asked for a protective order staying any further proceedings until this court rendered a decision in his appeal of the modification judgment, and stated that he would "not appear before a bias [*sic*] and unethical tribunal." In the alternative, he requested that the court transfer venue to Clay County.

The court held another hearing on June 13, 2019, for a determination of Father's ability to pay and to permit Father the opportunity to demonstrate to the court any change in his financial circumstances since the date of the modification judgment. Father did not appear. The court directed Mother's attorney to prepare a proposed order for the court's review. After the hearing but on the same day, Father filed a "Notice" in which he again alleged that the court lacked jurisdiction to hear any motions due to the pending appeal, and he told the court that he was refusing to appear "because this tribunal refuses to conform its behavior to Missouri Supreme Court Rules 2 and 4 and all judgments and orders are void as a

5

matter of law." Father asked the court to "cancel any currently scheduled hearing pending the present appeal."

On October 7, 2019, the court issued a writ of attachment and warrant of commitment. In the warrant of commitment, the court determined that Father was in indirect civil contempt of the modification judgment. The court found that Father had the financial ability to comply with the modification judgment's provisions that he reimburse Mother $6,352.03 for his share of the extracurricular and uninsured medical expenses by paying installments of $200 per month. In particular, the court noted Father's continuing employment with the same entity since the entry of the modification proceeding, his recent expenditures, which included his paying for a wedding ceremony and reception, and his refusal to appear before the court on two occasions to provide evidence that his financial circumstances had changed.

The court, therefore, issued the writ of attachment and warrant of commitment to arrest and detain Father and confine him to the Platte County Jail until such time as he purged himself of the contempt by paying $1,800, which was the balance owed for the months of January 2019 through September 2019 pursuant to the contempt order in the modification judgment. The court stated that, upon the posting of $1,800, Father "shall be released and that amount shall be sent to the attorney of record for [Mother]."

Case.net's eNotice History indicates that Father received notice of the court's issuance of the writ of attachment and warrant of commitment the day it

6

was issued. On the same day, Father filed a "Notice of Violation of Civil Rights Under 42 U.S. Code 1983." In this notice, which he also mailed to the Platte County Sheriff's Office, Father alleged that the writ of attachment and warrant of commitment was invalid and void, and he stated, "please let this notice serve as notice to law enforcement that execution of said Writ of Attachment subjects you, law enforcement, to 42 U.S. Code § 1983 civil liability, which [Father] will aggressively seek redress in state and/or federal court."

Father was arrested on December 3, 2019, and posted a bond of $1,800. On December 4, 2019, he filed a notice of appeal to the Supreme Court, which transferred the appeal to this court. While this appeal, case number WD83397, was pending, Mother filed a motion to release the $1,800 bond to her attorney as provided for in the writ of attachment and warrant of commitment. Mother noticed up the motion for a hearing. Father filed a motion for change of judge or recusal and noticed it up for hearing on the same day as Mother's motion. On December 17, 2019, the court held a hearing on both motions, but Father failed to appear. The court denied Father's motion for change of judge or recusal and entered its order releasing the $1,800 bond to Mother's counsel. On December 27, 2019, Father filed a second appeal, case number WD83442, from the order releasing the bond. We have consolidated Father's appeals.[3]

---

[3] We issued our opinion in Father's appeal of the modification judgment, case number WD82442, on February 11, 2020. *Frawley v. Frawley*, 597 S.W.3d 742 (Mo. App. 2020). In that case, we reversed and remanded the modified child support award after finding that Father was entitled to a credit on the Form 14 calculation to reflect his support obligation for his new daughter. *Id*. at 760. We affirmed the modification judgment in all other respects. *Id*.

Mother has filed motions to dismiss both of Father's appeals on the basis that the notices of appeal were untimely filed because they were not filed within ten days of the court's issuance of the writ of attachment and warrant of commitment on October 7, 2019.

A civil contempt order is appealable only when it becomes final. *In re Marriage of Crow & Gilmore*, 103 S.W.3d 778, 780 (Mo. banc 2003). "For purposes of appeal, a civil contempt order is not final until 'enforced.'" *Id*. at 781. "When 'enforcement' occurs depends on the remedy." *Id*. "Two remedies to coerce compliance are compensatory *per diem* fines and imprisonment." *Id*. "When the remedy is a fine, the contempt order is 'enforced' when the moving party executes on the fine." *Id*. When the remedy is imprisonment, "the contempt order is enforced at the time a court issues an order of commitment based on the contempt, or when the contemnor is actually imprisoned." *Frawley v. Frawley*, 597 S.W.3d 742, 753 (Mo. App. 2020) (citing *Crow*, 103 S.W.3d at 781-82, and *Carothers v. Carothers*, 337 S.W.3d 21, 25 (Mo. banc 2011)).

The Supreme Court in *Crow* recognized that "[t]here is some confusion whether actual incarceration is required, or whether an order of commitment is sufficient 'enforcement' to make a contempt order final for purposes of appeal." *Crow*, 103 S.W.3d at 781. The Court went on to note that it "has intimated that an order of commitment is sufficient to 'enforce' a contempt order." *Id*. The Court reasoned that, "[i]n issuing an order of commitment, the trial court imposes the

8

specific remedy—incarceration. At this point, the contempt order changes from mere threat to 'enforcement,' and becomes final and appealable." *Id.* at 781-82.[4]

In this case, the court enforced its contempt order on October 7, 2019, when it issued the writ of attachment and warrant of commitment directing the Platte County Sheriff or any Missouri law enforcement officer to arrest and detain Father and confine him to the Platte County Jail until he purged himself of the contempt by paying the current balance of $1,800.[5] The contempt order became final and appealable on that date. Pursuant to Rule 81.04(a), the notice of appeal was due no more than ten days later, which was October 17, 2019. Frawley's first notice of appeal, in case number WD83397, was not filed until December 4, 2019.

---

[4] Several years later, in *Carothers*, the Supreme Court recognized that, in *Crow*, "[t]he Court held that an order of commitment was sufficient to 'enforce' a contempt order and, therefore, actual incarceration was not required to appeal." *Carothers*, 337 S.W.3d at 24-25. *Carothers* concerned the appealability of a stayed order of commitment. *Id*. In that case, the Court held that a stayed order of commitment is not final and appealable until either the contemnor is actually incarcerated or the circuit court takes evidence to determine whether the contempt has been purged and reissues the warrant of commitment. *Id*. at 25. Notably, the concurring opinion in *Carothers* advocated for the Court's adherence to the "traditional rule," which provides for actual incarceration as the bright line for the appealability of *all* contempt orders where the remedy is incarceration. *Id*. at 28 (Fischer, J., concurring). Specifically, the concurring opinion asserted that the Court should "adhere to the 'traditional rule' and hold that a contempt order is enforced and, therefore, final and appealable *only* when the contemnor is incarcerated." *Id*. (Fischer, J., concurring) (emphasis added). That the concurring opinion in *Carothers* espoused adhering to the rule requiring actual incarceration indicates that the majority of the Court did not require actual incarceration.

[5] The court stayed execution of the warrant of commitment with regard to the remaining balance owed under the contempt order and ordered Father to continue paying $200 month toward that balance. The court also scheduled monthly review hearings at which Father was requested to appear "to determine whether or not the stay of execution has been satisfied by [Father], and if not, the warrant of civil commitment may be executed reinstating the warrant and revoking the stay of execution." It is clear that this stay applied only to the execution of the warrant of commitment with regard to the remaining balance owed under the contempt order and not to the $1,800 Father currently owed.

9

Therefore, it was untimely filed, and the appeal in case number WD83397 must be dismissed.

Father contends that his appeal in case number WD83442 should be allowed to proceed, however, because he filed his notice of appeal in that case within ten days of the court's order releasing the $1,800 bond to Mother's counsel. He argues that, when Mother requested that the court release the bond, she was "executing on the fine," and, as a result, he had another chance to appeal the contempt order at that time.

The remedy for Father's contempt was imprisonment, not a fine. The $1,800 that the court required Father to pay to purge the contempt was the amount that he owed pursuant the modification judgment, *i.e.*, the obligation that gave rise to the contempt order. The $1,800 was not a *per diem* fine imposed to coerce compliance with the modification judgment. Thus, Mother's request for an order releasing the bond to her counsel was not "executing on a fine." *See Emmons v. Emmons*, 310 S.W.3d 718, 724 n.4 (Mo. App. 2010) (explaining that "[e]xecution efforts to enforce a coercive fine are distinguishable . . . from execution efforts to enforce the underlying payment obligation giving rise to the contempt order"). The contempt order became final when the court issued the warrant of commitment on October 7, 2019, and the time for filing an appeal did not restart when the court ordered the release of the $1,800 bond. Father's appeal in case number WD83442, filed on December 27, 2019, is also dismissed.

10

**CONCLUSION**

Mother's motions to dismiss Father's appeals are granted. Father's motion for attorney fees and costs is denied.

_____
LISA WHITE HARDWICK, JUDGE

ALL CONCUR.

11